340 So.2d 226 (1976)
STATE of Louisiana
v.
Dwight HUNTER et al.
No. 57843.
Supreme Court of Louisiana.
October 14, 1976.
Rehearing Denied November 18, 1976.
*228 Robert J. Zibilich, Orleans Indigent Defender Program, New Orleans, for Dwight Hunter.
Garland R. Rolling, Metairie, for James Hawthorne.
Edward G. Koch, Jr., New Orleans, for Charles Petite.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Timothy W. Cerniglia, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
*229 DIXON, Justice.
On January 31, 1975, shortly before 1:00 a.m., the three defendants, Dwight Hunter, James Hawthorne and Charles Petite, entered the home of Anita Prados, age eighty. After taking a quantity of cash from her purse, and with a gun at the victim's head, the defendants ordered the victim to remove her clothes. She was gagged with a napkin and two of the three defendants proceeded to rape her. The defendants were apprehended in the victim's apartment immediately after the rapes occurred. The defendants were tried jointly before a twelve man jury on the charge of aggravated rape. Defendant Hawthorne was found guilty as charged and sentenced to death. Defendants Hunter and Petite were found guilty of attempted aggravated rape and each was sentenced to serve twenty years in the custody of the Department of Corrections. It is from these convictions and sentences that the defendants appeal.
HawthorneAssignments of Error Nos. 1, 2, 3, 4, 5, 6, 7 and 8
The defendant filed an application for a bill of particulars and a prayer for oyer, and objected to the refusal of the trial court to order the State to provide the following information to the defendant:
"Information on when, where, under what circumstances and by whom the defendant was identified prior to trial; the exact text of oral statements pertaining to the alleged crime made by codefendants; production for defense inspection any weapon or weapons used in the offense; a complete list of witnesses to be called at trial; production of physical evidence obtained from any person; medical reports of examinations conducted by the coroner's office on the victim; production for defendant inspection of results of ballistic reports, fingerprints and blood tests for use at trial."[1]
Pursuant to C.Cr.P. 484 the court may require the prosecutor "to furnish a bill of particulars setting up more specifically the nature and cause of the charge against the defendant." Here, though, the defendant's demands constitute a request for full blown pretrial discovery.
This court has often held that the bill of particulars and prayer for oyer does not entitle the defendant in a criminal case to discover the details of the evidence with which the State expects to prove its case. State v. Redfud, 325 So.2d 595 (La.1976); State v. Monk, 315 So.2d 727 (La.1975); State v. Kado, 300 So.2d 461 (La.1974). There was no error in the trial judge's refusal to order discovery of these items.
HawthorneAssignments of Error Nos. 10 and 23
Defendant contends that the trial judge erred in refusing to grant a severance prior to or during trial. Before trial began, all three defendants filed motions for severance pursuant to C.Cr.P. 704. Defendant Hawthorne based his motion for severance on the ground that the defenses of the three accused were antagonistic.
Neither in his written motion nor in the hearing on the motion to sever did the defendant demonstrate how the defenses to be presented were antagonistic. The mere allegation that the defenses are antagonistic is not sufficient to require a severance. State v. Medlock, 297 So.2d 190 (La.1974); State v. Baker, 288 So.2d 52 (La.1973).
In defense of his failure to provide concrete proof of antagonistic defenses, the defendant cites the trial court's failure to order discovery which, the defendant claims, prevented him from securing such proof. Discovery for the purpose of possibly using the evidence discovered to make a showing of an antagonistic defense is not within the bounds of Louisiana's criminal discovery procedure. See State v. Redfud, *230 supra. It would permit the defendant to obtain otherwise nondiscoverable evidence merely in the hope of establishing an antagonistic defense.
Defendant's second argument in support of his motion to sever is that the State was in possession of oral exculpatory statements made by the codefendants which, if introduced in the absence of his codefendants' taking the stand, would deny defendant Hawthorne his Sixth Amendment right to confrontation. Defendant alleges that since the statements of Hunter and Petite were exculpatory as to themselves, they would be inculpatory as to defendant Hawthorne. This argument was based on the fact that the victim might, and in fact did, testify that less than all three defendants had sexual intercourse with her.
At the hearing on the motion to sever, the State revealed that the statements were to the effect that each of the accused admitted being in the victim's residence, but denied the act of intercourse. Additionally, the prosecutor indicated that the State would not introduce these statements at trial unless one of the defendants denied being at the victim's home. In fact the statements were never introduced at trial. Since these statements were never offered into evidence, there has been no violation of the defendant's Sixth Amendment right to confrontation. United States Constitution, Amendment Six; Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); State v. Monk, supra; State v. Frierson, 302 So.2d 605 (La.1974).
At trial each defendant was called as a witness by his codefendants and each defendant exercised his Fifth Amendment right and refused to testify. The fact that a defendant wishes to call his co-accused as a witness is not sufficient ground for severance. This is so because the codefendant not being tried can assert the Fifth Amendment privilege and refuse to testify at the defendant's trial. State v. Medlock, supra; State v. Baker, supra. There was no abuse of discretion by the trial judge in failing to grant the severance. State v. Frierson, supra.
Assignments of Error Nos. 12, 13, 15, 16, 17 and 18 all concern the trial judge's rulings during the voir dire proceedings. Assignment of Error No. 14 was neither briefed nor argued and is deemed abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
HawthorneAssignment of Error No. 12
Defendant contends that the trial judge erred in permitting the State to question the members of the jury venire on the subject of their belief in capital punishment. At the time of trial, conviction of aggravated rape carried the penalty of death. R.S. 14:42. In addition, C.Cr.P. 798 provided:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
"(1) The juror is biased against the enforcement of the statute charged to have been violated, or is of the fixed opinion that the statute is invalid or unconstitutional;
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt; or
"(3) The juror would not convict upon circumstantial evidence."
Therefore, since there was specific statutory authority for this line of questioning, and the death penalty was a potential sentence in the case, there was no error in permitting examination of the jurors on their belief in capital punishment.
HawthorneAssignments of Error Nos. 15 and 16
In these assignments of error the defendant contends that the trial court *231 erred in allowing the State to qualify prospective jurors as to (1) their ability to return a capital verdict (this alleged error has already been discussed in Assignment of Error No. 12 above); (2) their ability to apply the law of "principals;" (3) their ability to return orally a guilty verdict if polled at the end of the trial, and (4) whether the ages of the defendants (sixteen, seventeen and eighteen years of age) would have an effect on the ability of the juror to return a capital verdict.
The ability to apply the law of "principals," to return orally a guilty verdict, and the ages of the defendants were all relevant to the issue of capital punishment in this case. (Jurors were excused for cause when they indicated that they could not vote to convict a sixteen year old of a capital crime and others were excused when they said that they could not convict if it were not proved that all three had in fact "committed" the rape). In addition, the pertinent part of C.Cr.P. 797 provides:
"The state or the defendant may challenge a juror for cause on the ground that:
"(4) The juror will not accept the law as given to him by the court."
Clearly, the ability to apply the law of "principals" is relevant to the question of whether the juror will accept the law as given to him by the court. (At trial the victim testified that only two of the three perpetrators of the crime actually had sexual intercourse with her). The regulating of the scope of voir dire examination is left to the wide discretion of the trial judge. State v. Corbin, 285 So.2d 234 (La.1973). Counsel should be given wide latitude in their voir dire examinations. State v. Brumley, 320 So.2d 129 (La.1975). There was no abuse of discretion on the part of the trial judge in permitting this examination.
HawthorneAssignments of Error Nos. 13 and 17
Assignment of Error No. 13 presents the most serious question for consideration among the voir dire errors alleged. After the State had challenged two jurors for cause on the basis of their beliefs in capital punishment, defense counsel requested the right to traverse the State's voir dire of those jurors the State challenged for cause. The trial judge refused the request and permitted no traverse. Ultimately twenty-seven more jurors were excused for cause by the State on the ground of the jurors' beliefs on capital punishment. In Assignment of Error No. 17, the defendant objected to the challenge for cause, based on the jurors' bias against capital punishment, and those areas discussed in Assignments of Error Nos. 15 and 16 above, of six potential jurors.
The trial judge was in error in refusing to permit defense examination of the twenty-seven prospective jurors. See State v. Breaux, 154 La. 320, 97 So. 458 (1923). Therefore, the refusal of the trial judge to permit voir dire of these veniremen to test the opinions expressed might have resulted in the State's being permitted to improperly excuse a number of jurors for cause on the capital punishment issue. (For example, these jurors might have had only general misgivings about capital punishment). Thus the result would be a violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). A review of the record reveals that, in fact, jurors Mitchell, Cross, Dugar and Duplessis might have been improperly excused. C.Cr.P. 800 provides in pertinent part:
"The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law."
The excusal for cause of six jurors was objected to by the defendant while the State still have seven peremptory challenges remaining. Even if the defendant is correct in asserting that the fact of unexhausted peremptories will not cure a Witherspoon violation, reversal of the conviction is not required. In each of the cases cited *232 by the defendant in which the Supreme Court reviewed cases with Witherspoon errors (Speck v. Illinois, 41 Ill.2d 177, 242 N.E.2d 208 (1968), rev'd 403 U.S. 946, 91 S.Ct. 2279, 29 L.Ed.2d 855 (1971); Bernette v. Illinois and Tajra v. Illinois, 45 Ill.2d 227, 258 N.E.2d 793 (1970), rev'd 403 U.S. 947, 91 S.Ct. 2290, 2291, 29 L.Ed.2d 858 (1971); Mathis v. New Jersey, 52 N.J. 238, 245 A.2d 20 (1968), rev'd 403 U.S. 946, 91 S.Ct. 2277, 29 L.Ed.2d 855 (1971); Wigglesworth v. Ohio, 18 Ohio St.2d 171, 248 N.E.2d 607 (1969), rev'd 403 U.S. 947, 91 S.Ct. 2284, 29 L.Ed.2d 857 (1971); Whan v. Texas, 438 S.W.2d 918 (Tex.Cr.App.1969), rev'd, 403 U.S. 946, 91 S.Ct. 2281, 29 L.Ed.2d 856 (1971)), only the sentence was overturned and the cases were remanded for resentencing. Witherspoon made clear that the remedy for wrongful excusal was the prohibition of the imposition of the death sentence and not reversal of the conviction. See State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971). However, due to the decisions of the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) and Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), the sentence of the defendant Hawthorne must be vacated in any event. Since the death penalty may not be constitutionally imposed, no valid complaint can be based on Witherspoon violations. State v. Rester, 309 So.2d 321 (La. 1975); State v. Fallon, 290 So.2d 273 (La. 1974). Therefore, the erroneous actions of the trial judge do not require reversal of the conviction but merely resentencing of the defendant.
Hawthorne and PetiteAssignment of Error No. 18
In this assignment the defendants contend that the trial court erred in failing to swear in and sequester each juror immediately after acceptance by the State and defense. C.Cr.P. 788 provides in pertinent part:
". . . When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror."
In addition C.Cr.P. 791 provides:
"A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication.
"In capital cases, after each juror is sworn he shall be sequestered.
"In noncapital cases, the jury shall be sequestered after the court's charge, and may be sequestered at any time upon order of the court."
Here, the trial judge did not administer the oath to each juror as he was chosen. Rather, all jurors were sworn together after the alternate juror was chosen. Therefore, there was a technical violation of C.Cr.P. 791. However, the record reveals that all were chosen the same day and the jurors were in fact sequestered at all times. The purpose of sequestering the jurors is to protect them from outside influence. State v. Ahrens, 250 La. 391, 196 So.2d 250, cert. den., 389 U.S. 871, 88 S.Ct. 156, 19 L.Ed.2d 152 (1967). Since the jurors were in fact sequestered and no prejudice to the defendants had occurred, the technical violation of C.Cr.P. 788 does not constitute reversible error. C.Cr.P. 921.
HawthorneAssignment of Error No. 22
Hunter and PetiteAssignments of Error Nos. 7 and 10
In these assignments all of the defendants objected to the trial judge's permitting a witness to testify as to what the victim told him on the night of the offense. Officer John Riviere, who participated in the arrest of the defendants, was called as a witness by the State. On the night of the crime the three defendants were hiding in the bathroom of the victim's house when the police arrived.
Officer Riviere testified that he was with Miss Prados as the three accused were brought out of the bathroom; that as Hunter was led out Miss Prados said that Hunter was one of those who raped her; that as Petite was brought out Miss Prados stated *233 that Petite was the one who tied her mouth up, and that Miss Prados identified Hawthorne as the individual who had raped her and who held the gun to her head while Hunter raped her.
The record does not reveal that any of these statements were made in response to questions posed by Officer Riviere. These statements by the victim were made within minutes of the completion of the crime while the perpetrators were still in the house attempting to hide from the police. While the officer's account of the victim's statements was hearsay, it clearly falls within the exception to the hearsay rule recognized by this court that the early complaint of a rape victim is admissible. State v. Brown, 302 So.2d 290 (La.1974). Reliability for such hearsay declarations is said to be supplied by the excitement of the event. McCormick on Evidence, § 297 (Cleary ed. 1972); 4 Wigmore on Evidence, § 1138-40 (Chadbourn ed. 1972); 6 Wigmore on Evidence, § 1761 (3d ed. 1940). The trial judge did not err in permitting this testimony.[2]
HawthorneAssignment of Error No. 19
In this assignment the defendant contends that the trial court abused its discretion in allowing Detective Ward to be qualified as an expert to draw a blackboard sketch of the victim's apartment. The prosecutor stated that the sketch was not drawn to scale and was being exhibited to the jury merely to show them a general layout of the rooms to help them better follow the testimony. No qualification of Detective Ward as an expert was ever made. In addition, the defendant never contended that the drawing was in any way inaccurate or prejudicial. This assignment lacks merit.
HawthorneAssignment of Error No. 21
In this assignment the defendant objected to the qualification of Philip Aviles as an expert in the field of forensic identification, more particularly, in the identification of seminal fluid. The witness testified that he had been a criminalist with the New Orleans Police Department for fifteen months and received formal on-the-job training throughout that time. He held a Bachelor of Science Degree from Southern University. He indicated that he had performed over fifty examinations of the type in question. He had been qualified as an expert in Sections "A," "E," "G" and "J" of the Criminal District Court of New Orleans.
The trial court has wide discretion in determining the competence of an expert witness. State v. Grove, 306 So.2d 308 (La. 1975); State v. Thorson, 302 So.2d 578 (La. 1974). The discretion of the trial court will not be disturbed in the absence of abuse. State v. Richmond, 278 So.2d 17 (La.1973).
There was no abuse of discretion here. This assignment lacks merit.
HawthorneAssignment of Error No. 20
Officer James Scott, one of the arresting officers, was called as a witness for the State and identified defendant Hawthorne and the other two defendants in court as the men he arrested on the night of the crime. After these identifications, the prosecutor had the witness identify certain money allegedly stolen from the victim on the night of the crime. The testimony was as follows:
"Q. O.K. I show you an envelope and contents which I'm marking as State Exhibit Thirteen and ask if you can identify the contents and, if so, how?
"A. Yes, sir, I can identify all. There are four $1.00 bills and three $5.00 bills. It has my initials on them on the left bottom corner of each bill.
"Q. Who did you turn this property over to?
"A. To the detectives in the Detective Bureau.
"Q. Now, off of which of these three subjects did you recover this?
*234 "A. Off of Dwight Hunter, sitting directly in the middle.
"Q. Let the record reflect the witness has identified Dwight Hunter. I would like the record also to reflect that this witness has properly identified each of the . . ."
At this point, counsel for defendant Petite objected and moved for a mistrial apparently on the ground that it was for the jury to determine whether the money was properly identified. The trial court denied the motion for a mistrial.
Defendant argues that since proper identification was a question for determination by the jury, the prosecutor's comment was prejudicial and the denial of a mistrial was error. We cannot say as a matter of law that this comment by the prosecutor was so prejudicial as to require a mistrial. C.Cr.P. 771, 775. This assignment lacks merit.
HawthorneAssignments of Error nos. 24 and 25
These assignments of error were neither briefed nor argued and are therefore deemed abandoned. State v. Matthews, supra; State v. Edwards, supra.
HawthorneAssignment of Error No. 11
The defendant contends that the failure of the State to compensate his court appointed attorney for his services violates his rights under Article 1, § 13 of the Louisiana Constitution of 1974 to be provided with compensated counsel. The pertinent portion of Article 1, § 13 of the Louisiana Constitution of 1974 provides:
". . . At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents." (Emphasis added).
As this court held in State v. Bryant, 324 So.2d 389 (La.1976), the last sentence of that section is aimed primarily at furnishing qualified counsel for indigents. In that regard there is no showing that the defendant was not represented by skilled and diligent counsel.[3] Nor is there any indication that defense counsel will not be compensated. See R.S. 15:141; State v. Wells, 324 So.2d 399 (La.1976). Therefore, we cannot say that the defendant's rights under Article 1, Section 13 of the Louisiana Constitution of 1974 have been violated. This assignment lacks merit.
HawthorneAssignments of Error Nos. 9 and 26
In these last assignments of error defendant Hawthorne contends that the trial court erred in denying defendant's motion to quash the indictment and in denying the defendant's motions for a new trial and in arrest of judgment. Defendant argues that the imposition of the death penalty for the crime of aggravated rape constitutes cruel and unusual punishment.
The death penalty imposed on defendant Hawthorne in this case may not be imposed due to the decisions of the United States Supreme Court in Roberts v. Louisiana, supra, and Selman v. Louisiana, supra. However, since the record reveals no other reversible error, the conviction is affirmed. State v. Thomas, 310 So.2d 517 (La.1975); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972); State v. Singleton, 263 La. 267, 268 So.2d 220 (1972). Therefore, this case will be remanded to the trial court for resentencing of the defendant Hawthorne in accordance with the procedure prescribed by the court in State v. Craig, La., 340 So.2d 191; State v. Lee, La., 340 So.2d 180 and State v. Sledge, La., 340 So.2d 205. He will thus be resentenced to the most serious *235 penalty for a lesser included offense which existed at the time of the commission of the crime. On January 31, 1975 the crime of simple rape carried a penalty of imprisonment at hard labor for not less than one nor more than twenty years. The legislature obviously intended the most serious penalty available under the law. In this case, although there is a range of from one to twenty years, the most serious penalty is twenty years at hard labor.
Accordingly, the convictions and sentences of defendants Hunter and Petite are affirmed. The conviction of defendant Hawthorne is affirmed and the case is remanded for resentencing of defendant Hawthorne.
SANDERS, C. J., concurs in the conviction but dissents from the sentence and assigns written reasons.
SUMMERS, J., concurs in the conviction but dissents from the sentence for the reasons assigned in the dissent to State v. Lee, La., 340 So.2d 180.
MARCUS, J., concurs in affirmance of convictions and sentences of Hunter and Petite and conviction of Hawthorne, but dissents from penalty directed by majority for Hawthorne for reasons assigned in his concurring and dissenting opinion in State v. Craig, 340 So.2d 191 (La.1976).
SANDERS, Chief Justice (concurring in affirmance of conviction but dissenting from the sentence).
I agree with Mr. Justice Summers that in adjusting to the decision of the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), we need only remand the case for a sentence hearing by a jury to determine whether capital punishment should be imposed. In 1971, I advocated such a procedure following the United States Supreme Court decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See my dissent in State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971).
Absent majority agreement on the jury hearing procedure, however, I would order the trial judge to impose a sentence of life imprisonment. Reduction of the sentence for aggravated rape from death to twenty years is a far too drastic reduction. In my opinion, such a change does violence to legislative policy.
For the reasons assigned, I respectfully concur in the affirmance of conviction but dissent from the sentence.
NOTES
[1] The defendant also objected to the failure of the trial judge to order the disclosures in connection with the defendant's motion for a severance. Insofar as these rulings affect the motion to sever they will be discussed in HawthorneAssignments of Error Nos. 10 and 23 below.
[2] Defendants Hunter and Petite also assign as error the refusal of the trial court to grant their request to order the prosecutor to disclose any and all statements made by the victim. The defendants were not entitled to discover that evidence. See Hawthorne Assignments of Error Nos. 1-8 above.
[3] In fact, in his brief in support of this argument defendant says:

"The appellant is not here suggesting that his trial counsel was unmotivated or inadequate, but rather that the Constitution secured his right to compensated counsel, which in the opinion of the drafters of the Constitution, would act more vigorously in his defense. Appellant's trial counsel was not compensated, therefore his right to such counsel was denied."