375 So.2d 1304 (1979)
STATE of Louisiana
v.
Marcel Joe ROGERS and Leo Rose.
No. 62957.
Supreme Court of Louisiana.
April 9, 1979.
On Rehearing October 8, 1979.
F. Irving Dymond, Dymond, Crull & Castaing, New Orleans, for Leo Rose.
A. J. Boudreaux, 24th JDC Indigent Defender Board, Metairie, for Marcel Joe Rogers.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., G. Michael Grosz, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
*1305 SUMMERS, Chief Justice.
Defendants Marcel Joe Rogers and Leo Rose were charged in two counts by a short form bill of information with conspiracy to commit aggravated arson and that they did commit aggravated arson of the David Crockett Fire Station in Gretna, Louisiana, on August 21, 1972. La.Rev.Stat. 14:26 (1940) and 14:51 (1964). After trial by jury each was convicted of conspiracy and acquitted of the charge of aggravated arson, and both were sentenced to imprisonment at hard labor for eighteen months. Both defendants have appealed. By stipulation, all assignments of error are deemed to be urged for both defendants.
The Davy Crockett Fire Station was burned on August 21, 1972. In April 1976 the Office of the Jefferson Parish District Attorney received information that the fire may have been the result of arson. After investigation, defendants Fire Chief Leo Rose and fireman Marcel Joe Rogers were indicted. Several firemen were granted immunity from prosecution and testified as witnesses for the State.
The pertinent articles of the Criminal Code in effect on August 21, 1972 provided:
La.R.S. 14:26.
"A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
"If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
"B. Whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; provided, however, whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment shall be imprisoned at hard labor for not more than thirty years.
"C. Whoever is a party to a criminal conspiracy to commit any other crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half the longest term of imprisonment prescribed for such offense, or both."
La.R.S. 14:51.
"Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered.
"Whoever commits the crime of aggravated arson shall be imprisoned at hard labor for not less than five nor more than twenty years, and shall be fined not more than twenty-five thousand dollars."

Rose's Assignments 1-6 and Rogers' Assignments 1 and 2:
Appellants contend that the trial judge improperly sustained the prosecution's denial of their requests for particulars.
In the first request for particulars pertinent to this appeal defendants asked:
"Does the State allege that your defendant damaged the structure in question by the use of an explosive substance or by setting fire to said structure?"
The State answered that it was not required to answer this request, and the trial judge upheld their response as good and sufficient.
The State submits in brief that counsel for defendant Rose were advised long before trial that the arson charged was committed by "setting fire" with a five-gallon can of gasoline. Rose's testimony that, in his opinion, "children breaking into the station" may have been responsible for the fire, and the fact that "police were responsible for having a kid convicted in another fire," is also referred to by the State to support their contention that the defendants *1306 had a well-planned defense to the effect arson was in fact committed but the fire was set by kids, not the defendants. This circumstance, the State argues, makes the method used to burn the structure irrelevant to the defense.
Nothing in the record supports the statement in brief that counsel for defendants were advised that gasoline was used to set fire to the structure. The Court may not consider matters which are not supported by the record.
As the trial judge points out in a per curiam to this defense contention, the crucial factor in the case at bar is that neither Rose nor Rogers was convicted of arson. The jury found only that they were guilty of a conspiracy to commit arson, thereby acquitting them of the crime of aggravated arson. Inherent in the jury's verdict, the trial judge states, is the fact that although Rose and Rogers conspired to have the structure burned, they did not actually damage, or aid or abet in damaging, the building, and there was no danger to human life. In either event, the trial judge was of the opinion that the failure of the State to disclose whether the structure was damaged by an explosive substance or by setting fire to it was not prejudicial. While prejudice may have resulted if defendants had been convicted of aggravated arson, damage to the structure was not an essential element of the conspiracy. Failure of the State to disclose how the damage occurred was not, therefore, essential to a defense against the charge of conspiracy to commit aggravated arson according to the reasoning of the trial judge.
This distinguishes the case at bar from the decision in State v. Mason, 305 So.2d 523 (La.1974), relied upon by the defense. That decision stands for the proposition that when a crime may be committed by either of two methods the defendant is entitled to learn from the State which method was used. Mason was convicted of aggravated arson and, except for the fact that under the circumstances of that case defendant knew the method used and no violation of constitutional rights resulted from the State's failure to furnish the information, the State would have been required to disclose which method was employed to damage the structure.
There is, moreover, overwhelming evidence to support the jury verdict in the instant case.
Thomas J. Thompson, a fireman who was given immunity from prosecution, testified that he was a member of the Davy Crockett Fire Company on August 21, 1972, the day it burned. He was at the central firehouse drinking that afternoon with Rose, Rogers and Fireman August Cuny. He heard Rose say that he dreamed the night before that the Davy Crockett firehouse had burned. Rose also said that it would be worth $500 if it did burn; whereupon Rogers said, "Don't worry about it, I'll take care of it." Later that afternoon Rose instructed the firemen to move the "steamer", a valuable antique pumper fire wagon, out of the Davy Crockett station and transfer it to the Central Station. He instructed them to tell whoever asked that the move was made to clean and polish the steamer for a parade, although no parade was known to be scheduled at the time.
After the "steamer" was moved, Thompson returned to the station where they discussed how they would fight the fire. When he was leaving that evening about 6 o'clock, Rose told Thompson to make sure the old lady who lived next door to the Davy Crockett station was taken to a place of safety when the fire alarm was sounded.
Following these events Thompson, Rogers, and Cuny drove to Rogers' residence where Rogers got a stack of newspapers. They then proceeded to the Davy Crockett station, and, while Cuny stood as lookout outside, Thompson and Rogers spread newspapers upstairs in the station and Rogers lighted them. The three then returned to the Central Station where they continued drinking.
After a while, when no alarm was sounded, Rogers, Thompson and Cuny returned to the Davy Crockett station where they saw the fire did not take. Rogers ran to his residence across the street and returned *1307 with a five-gallon can of gasoline. Rogers and Cuny went into the station house with the can and shortly thereafter came out. Cuny went home and Thompson and Rogers drove to the Central Station. On the way Rogers declared, "I think I have it good this time. It's going to get hot in there in a little while."
At Central Station they met Rose who asked Rogers if he had the fire started, and Rogers said, "Yes, I think I got it started good this time." Shortly thereafter Rose received a phone call from the chauffeur at the Davy Crockett Station asking him to come over. The chauffeur said he heard noises upstairs and refused to go up and investigate alone. Rose, Rogers, and Thompson then went to the fire station where, within minutes, the fire burst forth and engulfed the station.
Damage from the fire made necessary a major renovation costing $28,000.
Cuny corroborated Thompson's testimony in all essential details. He was also given immunity from prosecution. The testimony of these coconspirators is deemed to be assented to by Rose and Rogers. La.Rev.Stat. 15:455.
Dewey Gros was on duty as chauffeur (fire engine operator) at the Davy Crockett Station on August 21, 1972. At the Central Station that day, where he had gone to help clean the equipment, he overheard Rose say that he would pay anyone $500 to burn the Davy Crockett Station, and he heard Rogers say he would "burn it down." Gros saw the steamer being moved to the Central Station by Rogers, Cuny, and Thompson on orders from Rose.
Gros returned to the Davy Crockett Station and was on duty there when Rogers and Cuny came in with the five-gallon can. He saw them go upstairs and asked them what they were doing. They told him they were going to burn the station down. Thinking it was a jest, Gros did not take them seriously. When Rogers came down he told Gros to wait a few minutes, then to call the Central Station and report that he was hearing noises upstairs. Still thinking Rogers and Cuny were trying to scare him, Gros nevertheless complied with Rogers' instructions and called the Central Station. Rose, Rogers, and Thompson responded, and the fire followed.
After the fire was subdued, Rogers asked Gros if he had taken the gasoline can out of the building. Gros said he had not. Rogers later told Gros that he had removed the can from the burned building.
An appellate court is mandated by Article 921 of the Code of Criminal Procedure not to reverse a judgment or ruling on any ground unless, after examination of the record, it appears that the error complained of has probably resulted in a miscarriage of justice. On the basis of the eyewitnesses' testimony of the coconspirators who testified for the State, and the testimony of Gros, no miscarriage of justice resulted here. It cannot be said that prejudice resulted to the substantial rights of the accused.
Rose's Assignments 2 and 3: Paragraphs 3 and 4 of the application for bill of particulars request:
"(3) Whose life was foreseen to be endangered by the damaging of said structure?"
(4) Upon what circumstance does the State allege that it was foreseeable that human life might be endangered by the damaging of said structure?"
The defense asserts that the State's apparent theory was the foreseeability of danger to firemen. If this were so, it is argued, every fire to which firemen were called would constitute aggravated arson, for firemen are endangered in all cases. There is evidence to the contrary. Testimony in this record is to the effect that Fire Chief Rose told Rogers to be sure to move the elderly woman who lived next door to the fire station when the fire started. Dewey Gros also testified that his life could have been endangered because he did not realize that a fire was actually set in the station while he was on duty there. Rose undoubtedly realized that it was "foreseeable that human life might be endangered," *1308 under these circumstances. La.Rev.Stat. 14:51. This elderly woman was the obvious person whose life might foreseeably be endangered. The house in which the elderly woman resided is shown by photographs in the record to be in close proximity to the fire stationapparently within three feet. In addition, other residences in close proximity to the station in this residential area were foreseeably in danger of being set on fire by the burning station and the lives of their occupants endangered. These facts were known to Fire Chief Rose, a matter shown by the record and by clear inference from his position of authority in the fire department.
There is no prejudice to an accused when the State refuses to furnish information which the accused already has, and which the State has good reason to believe is available to the accused.
Rose's Assignments 4 and 5: The following request for bill of particulars is the subject of these assignments:
Does the State contend that there are any other persons not named in the indictment who are guilty of said offense either by virtue of their having personally committed the act or by virtue of the provisions of R.S. 14:24.[1]
Please state the names of all unindicted coconspirators.
This information, the defense contends, would aid the defense in determining whether evidence will be objectionable and thereby assist the trial judge in regulating the admissibility of evidence at the trial.
The per curiam of the trial judge adequately disposes of these assignments:
"This request, in effect, was a request for a list of the State's witnesses and for the details of the State's evidence, for it was self-evident from the circumstances of the case that any unindicted coconspirators would either be state witnesses or unknown to the State. The jurisprudence of this State has consistently held that the Bill of Particulars does not entitle the defendant to discover the details of the evidence with which the State expects to prove its case, including the witnesses to be called at trial. State v. Hunter, 340 So.2d 226 (La.1976)."
Rose's Assignment 6: Rose contends it was error for the trial judge to deny his request for "each of the overt acts of the conspiracy, and state by whom, when and where each overt act was committed."
Because of his intimate involvement in the conspiracy and the knowledge he obtained from his coconspirators relating to the action taken by them in furtherance of their scheme, there can be no valid contention that Rose was unaware of the overt acts of the conspiracy. Furthermore, the bill of information informed him of the crimes charged, the place and time when the offense occurred and the overt act necessary to complete the conspiracythat is, the burning of the structure.
An accused is entitled to be informed of the nature and cause of the accusation against him, but this right does not entitle him to full discovery of the State's evidence or of the details of the State's case. State v. May, 339 So.2d 764 (La.1976). There was no error in the ruling of the trial judge.
Rose's Assignment 8 and Rogers' Assignment 5: Here it is contended that error occurred when the trial judge allowed the State to elicit testimony from Dewey Gros concerning a purported oral statement of the defendant Rose, when the statement occurred on a date different from that contained in the 768 notices of intent to use such statement.
The 768 notice derives from Article 768 of the Code of Criminal Procedure:
"If the State intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a *1309 confession or inculpatory statement shall not be admissible in evidence."
Prior to trial the State served notice of its intention, in accordance with Article 768 of the Code of Criminal Procedure, to use and introduce in evidence at the trial certain oral statements made by defendant on August 21, 1972the date of the offense charged.
In his opening statement the prosecutor stated that on August 23, 1972, two days after the fire and before Casse, the investigator for the State Fire Marshall, interviewed Dewey Gros, defendant Rose spoke to Gros. He "told him to tell Mr. Casse about the noise, tell him about blown fuses and so forth, and in effect tell him everything, but don't say anything about the gasoline; which the man did, he lied to Casse." Defense counsel did not object to this statement.
Thereafter Dewey Gros, a State witness, who considered himself immune from prosecution because of his participation in the conspiracy,[2] was called to the stand. On direct examination by the State he was asked:
"Q. Subsequent to the time that the fire station burned down and more particularly on August 23rd, were you interviewed by the State Fire Marshall?
A. Yes, sir.
Q. Had you had any conversation with Mr. Rose prior to that?
A. Yes, sir. He called me on the side in back, of Mrs. Gauthreaux's house and he said that the station";
Whereupon counsel for Rose objected and asked that the jury be retired. When the jury was retired counsel stated that he had not been furnished with any notice of intention to use oral [inculpatory] statements of August 23rd.
The State's attorney answered that the 768 requirement was applicable to inculpatory statements made to law enforcement officers. In his opinion, therefore, the notice was not required in this case because the statement to which Gros would testify was made to him by Rose, a fellow conspirator, not connected with law enforcement. The State's attorney also pointed out that the statement of Rose was also referred to in his opening statement. In brief the State also argues that the statement was part of the res gestae.
The trial judge overruled the objection, and Gros testified that Rose called him aside and asked him to tell the Fire Marshall that "I just heard noises upstairs and to tell him that I had trouble with kids in the neighborhood and to tell him that I had trouble with the fuses blowing." From the record it appears that Gros, when interviewed by the Fire Marshall, told him what Rose suggested. The next day the Fire Marshall closed the investigation.
Rose took the stand in his own defense and testified in detail concerning the entire case. In his direct testimony he did not refer to or otherwise deny his statement to Gros. His theory of the case suggested to the investigating Fire Marshall was, "we had been having problems with children breaking into the station." On cross-examination, however, he denied that he told Gros to lie to the Fire Marshall. He did admit that he told Gros to tell the Fire Marshall "about the kids playing around the station."
In his per curiam to this assignment of error the trial judge decided that the statement by Rose to Gros was neither a confession, nor was it inculpatory within the meaning of Article 768. The defense contention was without merit, according to the trial judge, for the additional reason that no objection was made when Rose's conversation with Gros was referred to in the State's opening statement. The trial judge was correct in his ruling.
State v. Brumfield, 329 So.2d 181 (La. 1976), upon which defendants rely, does not support their position. The case refers to Article 768 and says:

*1310 "Reference to Article 768 discloses that confessions and inculpatory statements are treated together. For all practical purposes the rules applicable to confessions are applicable to inculpatory statements. State v. Robinson, 215 La. 974, 41 So.2d 848 (1949). The distinction is that a confession admits commission of the crime, whereas the inculpatory statement admits a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred.
`As used in Article 768, the term inculpatory statement refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events. . . .' State v. Fink, 255 La. 385, 231 So.2d 360 (1970). See also State v. McKinnon, 317 So.2d 184 (La.1975)."
It is true that Rose's statement to Gros was made almost two days after the offense. Because it was not a necessary incident of the criminal act, or an immediate concomitant of it, or formed one continuous transaction in conjunction with it, it cannot be said to form part of the res gestae as the State contends. La.Rev.Stat. 15:447, 448.
And, although the contested statement was made out-of-court and after the crime was committed, it does not fall within the full definition of an incriminating statement. An essential element of an inculpatory statement is absent in this case. Rose's statement as presented by Gros to the jury does not admit a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred. To the contrary, the statement is exculpatory. It refutes the State's contention that the fire was a result of a conspiracy to commit arson involving him. The statement was part of Rose's defense, his theory of how the fire had its origineither through the criminal conduct or the pranks of children, or because of the experience at the station with "blowing" fuses.
If every statement of a defendant contrary to the State's theory of the case were considered inculpatory, an accused would be hard-pressed to defend himself. Such a rule would also compel the State to give a 768 notice concerning every statement made by the defendant in his effort to exonerate himself.
Rose's contention that introduction of Gros' statement compelled him to take the stand against his interest to deny making the statement is untenable. Not only did Rose not denounce the statement on his direct examination, but on cross-examination he admitted that Gros' version of the statement was partially correct because he testified that he told Gros to tell the Fire Marshall "about the kids playing around the station."
These assignments are without merit.
Rose's Assignment 9: At the conclusion of the State's direct examination of Dewey Gros, the prosecutor asked, "Mr. Gros, you have admitted that you lied to the State Fire Marshall when he came over to investigate this matter. Now, are you in fact telling the truth today?" The defense objected and was overruled. Gros then replied that he was "telling the truth today."
Defense counsel argued that it was error for the court to permit the State to bolster Gros' testimony by having him affirm his present truthfulness with such a self-serving repudiation of his contradictory statement to the Fire Marshall.
This action, the defense argues, is contrary to the proscription contained in Section 484 of Title 15 of the Revised Statutes that testimony to establish the credibility of a witness is inadmissible unless that credibility is attacked. In addition, the argument proceeds, Gros' statement was a conclusion, an impermissible opinion under Section 463.
Technically the defense contention is arguably valid. However, in this case the truthfulness of Gros' in-court testimony was at least partially corroborated when Rose later admitted that he told Gros to tell the Fire Marshall "about the kids playing around the station." It was also brought out by the defense that trouble had been experienced with fuses "blowing" in the *1311 station. There is, therefore, no prejudice here which would warrant reversal of this conviction.
Rose's Assignment 10: While Gros was being cross-examined by defense counsel, he was asked, "Were you told what the Fire Marshall Inspector testified to so that you wouldn't contradict that, is that right?" The prosecutor objected, and the objection was sustained.
Defendants argue that the witness had been sequestered. The question was asked on cross-examination, it is asserted, to ascertain whether the witness' testimony violated the rule of sequestration because his testimony so closely conformed to the testimony of the Fire Marshall's. To deprive the defense of this inquiry is said to be an unreasonable restriction of the right to cross-examination.
Defense counsel made no objection to the ruling of the trial judge, nor did the defense make known to the court the action which he desired the court to take. La. Code Crim.Pro. art. 841; State v. Ferguson, 358 So.2d 1214 (La.1978); State v. Holstead, 354 So.2d 493 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976); State v. Powell, 325 So.2d 791 (La.1976).
Rogers' Assignment 9: In a motion for a new trial, it is alleged that the verdict was a compromise because 1) defendants were found guilty of a conspiracy to burn the structure and were acquitted of the second count charging them with aggravated arson, despite the fact that the structure was actually burned; 2) the trial judge refused to order the State to furnish information of at least one overt act; 3) the court refused to order the State to inform defendants how the offense was committed, that is, whether by an explosive substance or by setting fire to the structure; 4) the rulings on evidentiary matters were erroneous; 5) amendments to the indictment purportedly made by the District Attorney were in fact made by one of his Assistants; 6) failure of the prosecutor to disclose information favorable to the defense in response to their Brady Motion.
Aside from the defense contentions heretofore considered in this opinion, only the second and last allegation of the motion for a new trial pertaining to the compromise verdict and the Brady Motion are urged in brief on this appeal.
The jury's verdict was not incomprehensible. They may have found that there was insufficient evidence of danger to human life as the crime of aggravated arson requires.
The allegation concerning the Brady Motion is that the District Attorney's office was aware that Dorothy Barrett was able to give exculpatory testimony and failed to timely apprise defendant of that fact. The import of this assertion is that earlier awareness of Barrett's testimony would have enabled them to procure other witnesses. However, at the hearing on the motion for a new trial no support for the assertion that other witnesses could have been obtained was forthcoming. The defense did have the benefit of Barrett's testimony and, upon learning of her availability, made no motion for continuance. No prejudice to the defense is shown.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns reasons.
DIXON, J., concurs.
CALOGERO, J., dissents, believing A/E Nos. 4, 5 & 6 are meritorious for the reasons assigned by TATE, J.
DENNIS, J., dissents, believing that several of the assignments present reversible merit.
TATE, Justice, dissenting.
The defendants were charged by a short-form information with conspiracy to commit arson and were convicted of that charge (only).
I would reverse the convictions, since I find merit in Rose's assignments of error 4, 5 and 6, which by stipulation apply to both defendants. These assignments allege that the trial judge abused his discretion in denying defense motions to compel answers to *1312 a bill of particulars requesting the names of any unindicted co-conspirators, and a description of each of the overt acts of the conspiracy, and by whom, when and where they were committed.
Article I, Section 13 of the Louisiana Constitution of 1974 gives criminal defendants the right to be informed of the charges against them. Article 484 of the Code of Criminal Procedure, providing that the defendant has a right to a bill of particulars, implements this constitutional right. The official revision comment to the article noted that under the 1921 constitution, like the 1974 document, "the defendant has a constitutional right to information necessary to inform him of the nature and cause . . . as is necessary to prepare his defense.[1]
It is essential to a conspiracy that there be conspirators, and at least one overt act. Thus the bill of particulars requested the bare essentials of the crime charged.
The trial court denied the request for the names of co-conspirators on the ground that such unindicted persons would almost certainly be state's witnesses. It relied on State v. Hunter, 340 So.2d 226 (La.1976) for the proposition that a bill of particulars cannot be used to compel disclosure of witnesses. However, in Hunter a list of all witnesses, expressly including mere observers of the crime, was demanded.
Here, the names of people who were obviously witnesses, but whose role was more critical, were requested. Defendants had a right to know with whom they were charged with conspiring. If this resulted incidentally in the disclosure of the names of witnesses, the state cannot be heard to complain on the basis that there is no provision for the discovery of names of witnesses. This situation is analogous to that of a police informant who was also a party to an alleged illegal transaction: his name is not discoverable in his capacity as an informant, but he must be identified in his capacity as a participant in the transaction that constitutes the crime. See State v. Dotson, 260 La. 471, 256 So.2d 594 (La.1971) and authorities therein cited at 256 So.2d 606.
Indeed, it is just as essential to a conspiracy that there be conspirators as that there be a victim of a crime against the person; yet it would not be permissible for the state to withhold disclosure of the names of the victims of the crime, or some of them, because they happened to be potential witnesses at trial.
Nor is it permissible to suggest that a criminal defendant need not be informed of the details of when, where and with whom he is alleged to have conspired, or what overt acts were committed, on the basis that he was there and should know better than anyone. This assumption is predicated on an assumption of his guilt.
Giving these defendants the benefit of the presumption of innocence as constitutionally required, it can be seen that they were substantially prejudiced in the preparation of their defense by requiring them to defend against any and all allegations of conspiracies that might have resulted in the burning of the building, rather than a specific conspiracy involving specific persons and specific overt acts. Mere "evidence" the state plans to put on need not be disclosed in response to the bill of particulars; but the essential factsnot legal conclusionsthat the evidence is designed to prove, must be disclosed.
For these reasons, I respectfully dissent.

ON REHEARING
BLANCHE, Justice.
We granted a rehearing in order to reconsider whether the trial court abused its discretion in refusing to grant the defendant's request for a bill of particulars. We now reverse the judgment of the trial *1313 court and hold that where a defendant is charged with conspiracy to commit a crime, he is entitled to be informed through a bill of particulars of the identity of those unindicted co-conspirators known to the state and of any overt act or acts in furtherance of the commission of the crime.
Art. 1, § 13 of the Louisiana Constitution provides that the accused shall be informed of the nature and cause of the accusation against him. The bill of particulars provided for in La.C.Cr.P. art. 484 is a means by which the defendant is so informed. Its purpose and function is to inform the defendant of the scope of the offense charged. It is not intended to be a discovery device whereby a defendant may discover the state's evidence or the details of the state's case. State v. May, 339 So.2d 764 (La.1976). Properly used, it should inform the defendant with particularity of all of the essential facts relied upon to prove the crime charged. In so doing, the criminal transaction will be defined so as to remove any doubt as to the crime being charged. It is then that the defendant will know the scope of his criminal activity so as to properly defend himself and eliminate any possibility of ever being charged again with the same criminal conduct.
No general formula exists dictating what information must be made available to the defendant. The extent to which a bill of particulars should be granted is governed by the nature and complexity of the case. State v. Miller, 319 So.2d 339 (La. 1975). Due to the nature and complexity of the charge of conspiracy, we are of the opinion that a more definitive bill is required.
Criminal conspiracy is defined in La.R.S. 14:26 as follows:
"A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
To constitute the crime, there must be at least two or more conspirators and at least one overt act before there is a criminal conspiracy. Accordingly, since the crime may be committed with any number of persons, the defendant could not be made aware of the criminal transaction of which he has been accused until he has been informed with whom he has supposedly conspired. Likewise, as the crime of aggravated arson may be committed in innumerable ways, an identification of the overt act or acts in furtherance of the crime is necessary before the defendant is aware of which actions may bear criminal responsibility. With this information, the scope of the defendant's criminal activity has been delineated.
How often we hear the cry that the bill of particulars is not an extensive discovery device and that it is not to be used to discover the list of the state's evidence or any of its witnesses. State v. Brewer, 301 So.2d 630 (La.1974); State v. Hunter, 340 So.2d 226 (La.1976). But as suggested by Justice Tate in his dissent: What if a witness is a co-conspirator? An analogous situation occurs when the state is required to disclose the identity of the victim of the crime even though he may be a potential witness at the trial. See State v. Smith, 275 So.2d 733 (La.1973). Likewise the identity of an unindicted co-conspirator should be disclosed to defendant even though he may be a potential witness for the state.
Invoking the well-recognized principle that otherwise discoverable information need not be divulged in a bill of particulars where the defendant was aware of the facts he requested prior to the trial,[1] it is argued that defendant ought to know with whom he conspired. This argument assumes the defendant's guilt and is impermissible in light of the presumption of innocence which he is constitutionally accorded, La.Const. art. 1, § 16.
*1314 For these reasons, the conviction and sentence are set aside and the case is remanded for a new trial consistent with this opinion.
REVERSED AND REMANDED.
SUMMERS, C. J., dissents and would adhere to the original opinion.
NOTES
[1] La.Rev.Stat. 14:24:

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
[2] The State's attorney stated in closing argument that he wasn't given immunity in this case "because he had no involvement outside of suspicion and the things that he suspected."
[1] In fact, constitutional attacks on the short-form indictment, such as was used here, as inadequately meeting the constitutional requirement that an accused be informed of the nature and cause of the accusation against him, have been met chiefly with the response that the right to a bill of particulars cures any constitutional inadequacy in the indictment. See State v. Mason, 305 So.2d 523 (La. 1974), and authorities therein cited.
[1] State v. Gray, 351 So.2d 448 (La.1977); State v. Ware, 345 So.2d 33 (La.1977).