404 So.2d 222 (1981)
STATE of Louisiana
v.
Wayne D. HENNIGAN.
STATE of Louisiana
v.
Guy CLEMENT, Jr.
STATE of Louisiana
v.
Larry A. COOLEY.
Nos. 80-KA-2733, 80-KA-2775 and 80-KA-2776.
Supreme Court of Louisiana.
September 8, 1981.
Rehearing Denied October 9, 1981.
*225 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Walter L. Smith, Jr., Larry J. Regan, Asst. Attys. Gen., Leonard K. Knapp, Dist. Atty., Charles W. Richard, Asst. Dist. Atty., for plaintiff-appellee in all cases.
Donald G. Kelly, of Kelly & Salim, Natchitoches, for defendant-appellant in 80-KA-2773 and 80-KA-2776.
Ralph J. Hanks, Jr., Donald G. Kelly (co-counsel) of Kelly & Salim, Natchitoches, for defendant-appellant in 80-KA-2775.
WATSON, Justice.[*]
Defendants, Wayne D. Hennigan, Guy Clement, Jr., and Larry Cooley, were indicted for perjury in violation of LSA-R.S. 14:123. The three cases were consolidated for trial. Cooley and Clement were found guilty on their single count indictments and Hennigan was found guilty on one count of his three count indictment.
Hennigan was sentenced to one year with the Department of Corrections, suspended, placed on unsupervised probation for two years and fined $500. Clement was sentenced to one year with the Department of Corrections, suspended, placed on unsupervised probation for two years and fined $200. Cooley was sentenced to one year with the Department of Corrections, suspended, and placed on unsupervised probation for two years.
All three defendants appealed their convictions. Larry Cooley died on July 24, 1980, as a result of injuries sustained in an automobile accident. Cooley's conviction must be vacated and his case remanded to the district court for dismissal of the indictment against him. State v. Morris, 328 So.2d 65 (La., 1976). The remaining defendants, Hennigan and Clement, have made forty-five assignments of error grouped in sixteen arguments.

FACTS
Hennigan and Clement are employees of the State of Louisiana, Department of Elections *226 and Registration. They were charged with giving perjured testimony before a Calcasieu Parish Grand Jury, which was investigating allegations of prohibited political activities by Civil Service employees.
The grand jury investigation resulted from a complaint by Alvin Pilley, a co-worker with the Department of Elections and Registration. Pilley had reported to the Civil Service and the FBI that he was being solicited for campaign contributions by his supervisors, who had agreed to let him file false expense vouchers to recoup the contributions. The FBI notified the Louisiana attorney general's office. Pilley was fitted with a body microphone and wore it to the Lake Charles voting machine warehouse, where defendants conversed about the required campaign contributions and reimbursement. A nearby receiver recorded the conversations. In their testimony before the grand jury, defendants denied any knowledge of the recorded events.

ARGUMENT NUMBER I
Assignments of Error Number 1, 2, 3, 4, 5, 6, and 8
It is contended that the trial court did not require proper response to defendants' discovery motions, discovery being restricted and delayed to defendants' prejudice.
GRAND JURY TESTIMONY OF DEFENDANTS
Assignments of Error Number 4 and 5
Defendants requested a transcript of their grand jury testimony. A transcript of Hennigan's testimony was provided but the court reporter became seriously ill before she had an opportunity to transcribe the testimony of Cooley and Clement. The trial court ruled that defendants could listen to or make duplicates of the tapes of that testimony in a controlled environment. Defendants objected to this method of discovery. In a second discovery motion, defendants again requested the transcripts. The state answered that it was "available" (i. e., the tapes were at the court reporter's home), noting the trial court's previous ruling.
Defendants maintain that they were not provided with copies of the transcripts until two or three days before trial, and this delay constituted prejudicial error. Defendants also assign as error the trial court's refusal to quash the indictments against them because of the state's failure to furnish the requested transcript.
LSA-C.Cr.P. art. 716 A provides:
"A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney."
Although the actual transcripts were not provided until a few days before trial, the defendants were given much earlier access to the grand jury tapes. There was adequate compliance with LSA-C.Cr.P. art. 716 A. At the second discovery hearing the trial court indicated that if listening to the tapes proved inadequate defendants could move for a continuance. Defendants did not choose to exercise this option and cannot now contend that they were prejudiced by the delay in receiving the transcripts.
These assignments of error lack merit.
RECORDED CONVERSATIONS OF DEFENDANTS
Assignments of Error Number 1, 2, 3, 5, and 8
Defendants' conversations were secretly recorded by Alvin Pilley on two occasions. These recordings were introduced at trial to establish that defendants lied to the grand jury when they denied any knowledge of the matters under investigation.
The first discovery motions filed by the defendants requested that the defense be supplied with tapes and other tangible evidence to be introduced at the trial. The state's response listed eight such pieces of *227 evidence, located at the "Attorney General's Office," "District Attorney's Office," or "Louisiana State Police, Evidence Vault." (Tr. 38) Defendants objected to the sufficiency of these locations and the state orally informed the court that it would furnish specific addresses.[1] In response to defendants' second discovery motion, specific addresses were furnished by the state. The trial court denied defendants' request to have the state present all such evidence in Lake Charles, the trial location.
Defendants assign error to this ruling. They assert that the discovery articles of the Code of Criminal Procedure[2] do not envision that a defendant be forced to travel throughout the state in order to conduct discovery. Defendants contend that a rule of "reasonableness" should be applied, which was violated here.
While the defendants were not presented with the actual tapes, they were provided on January 28, 1980, with transcripts of the conversations recorded by Alvin Pilley. LSA-C.Cr.P. art. 716 A, cited supra, requires the district attorney to permit the defense to inspect and reproduce the items enumerated. The articles impose no affirmative duty upon the prosecution to assemble all items requested in discovery and to present them to the defense. If defendants considered the locations inadequate, their remedy was to file a second discovery motion. Such a motion was not filed and the state furnished complete addresses and locations. The state's responses met all of the legal requirements. The trial court did not err in ruling that the action taken by the state in response to discovery requests was sufficient.
These assignments of error lack merit.
NAMES AND ADDRESSES OF STATE'S WITNESSES
Assignment of Error Number 1
In their first discovery motions, the defendants requested the state to furnish them with the names and addresses of any and all witnesses expected to be called at trial. The trial court upheld the state's refusal to furnish this information. Defendants assert that the trial court erred in upholding this refusal.
Defendants rely on State v. Rogers, 375 So.2d 1304 (La., 1979). Rogers held that a defendant, charged with conspiracy, was entitled to learn by way of a bill of particulars, the names of any alleged co-conspirators, even though they might be witnesses for the state. Rogers, concerned with a conspiracy prosecution, is a limited exception to the general rule that criminal discovery does not enable a defendant to discover the state's evidence. State v. Hunter, 340 So.2d 226 (La., 1976); State v. May, 339 So.2d 764 (La., 1976); State v. Rogers, supra, at 1313.
This assignment of error lacks merit.
EXACT TIME OF CRIMINAL ACT
Assignments of Error Number 2 and 6
The defendants' second discovery motion contained a request for the exact time of day of the taped conversations. The trial upheld the state's objection to furnishing this information. Defendants assert that these specific times were necessary for an alibi defense, and the trial court should have quashed the indictments because of the state's refusal to furnish these times.
The trial judge's ruling that the state's answer was sufficient should not be disturbed absent a clear showing that he abused his discretion and caused prejudice to the accused. State v. Huizar, 332 So.2d 449 (La., 1976). Defendants have failed to show that the trial court abused its discretion.
These assignments of error lack merit.
GRAND JURY TESTIMONY OF ALVIN PILLEY
Assignment of Error Number 1
In their initial discovery motions the defendants requested a copy of Pilley's *228 grand jury testimony. The state's objection to furnishing that testimony was sustained by the trial court. The defense contends that this ruling was error because Pilley was the only substantive prosecution witness.
In State v. Martin, 376 So.2d 300 (La., 1979), the trial court's refusal to provide a witness' grand jury testimony was upheld because the defendant failed to demonstrate a particularized need for that testimony. Defendants assert that they have a particularized need for the testimony because Pilley is a key witness. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), allowed a defendant the right to review testimony of other persons appearing before a grand jury. Dennis involved a conspiracy charge where there was a particular need for the grand jury testimony of the government's witnesses. In light of Louisiana's well settled practice of keeping testimony before a grand jury secret,[3] and defendant's failure to demonstrate a particularized need for Pilley's grand jury testimony, the trial court's ruling was not erroneous.
This assignment of error lacks merit.

ARGUMENT NUMBER II
Assignment of Error Number 12
Defendants claim that the trial court erred in forcing them to choose, two weeks before trial, between trial by judge or jury. Defendants strenuously objected to making that decision. Reserving objections, defendants, individually and through counsel, waived their right to trial by jury. Defendants assert that this "forced choice" was not voluntary.
Defendants note that an accused has the right to trial by jury which he may knowingly and voluntarily waive.[4] The law does not provide a mechanism for forcing a decision and defendants assert that they had a right to defer their choice until commencement of trial.
Accepting, arguendo, defendants' contention that they are not required prior to trial to choose trial by jury or judge,[5] no reversible error was committed. Immediately prior to commencement of trial, the trial court offered defendants another choice. Defendants refused this offer, noting that they had not prepared for a jury trial and that they had not received a jury venire. Defendants did not, however, seek a continuance in order to prepare for a jury trial. In light of the trial court's second offer of a jury trial and defendants' failure to request a continuance, defendants suffered no prejudice when the trial court required them to choose their mode of trial two weeks before trial began.
This assignment of error lacks merit.

ARGUMENT NUMBER III
Assignments of Error Number 15, 16, 17, 18, 19, 20, 22, 26, 28, 33, and 38
Defendants urge that the trial court erred in admitting hearsay testimony, resulting in denial of a fair trial.
Hearsay evidence is inadmissible in criminal trials. LSA-R.S. 15:434 and 15:463. State v. Toomer, 395 So.2d 1320 (La., 1981). State v. Martin, 356 So.2d 1370, at 1373-1374 (La., 1978) adopted Professor McCormick's definition of hearsay evidence:
"`Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' C. McCormick, Evidence, Section 246 (Cleary ed. 1972)."
Toomer noted that evidence is not hearsay when offered to prove only that it occurred, State v. Hatcher, 372 So.2d 1024 (La., 1979), or that a conversation took place. State v. Ford, 368 So.2d 1074 (La., *229 1979). Several of defendants' objections to alleged hearsay statements were properly overruled because they were not hearsay; they were not offered to prove the truth of the facts recited in the declaration.
Assignment of Error Number 15
Fred Gwin, an investigator with the Louisiana Attorney General's office, testified that Alvin Pilley had given him a description of vehicles driven by the defendants. This was not intended to prove the truth of the vehicle descriptions, but to explain how Gwin had obtained knowledge of the vehicles. This was a non-hearsay use of Pilley's statement.
This assignment of error lacks merit.
Assignment of Error Number 16
Gwin testified that Pilley was given $100 by the investigating officers because:
"The information that was received in the investigation, so far, indicated that it would be necessary for him to contribute $100...." (Tr. 774)
This testimony was offered to explain the motivation behind giving Pilley $100 and not to prove that it was necessary for Pilley to contribute $100, and was therefore not hearsay. The testimony was not offered to prove the truth of the facts recited.
This assignment of error lacks merit.
Assignments of Error Number 17 and 18
This testimony was offered by the state to lay a foundation for admission of the tape recordings. The testimony involved instructions for use of the microphone by Pilley. It was not offered to prove the truth of what was said and was not hearsay.
These assignments of error lack merit.
Assignment of Error Number 19
Fred Gwin said he observed Hennigan come out of the voting machine warehouse. The defense objected on the ground that Gwin had no knowledge of what Hennigan look like, but had been told by Pilley that this individual was Hennigan. The trial court overruled the objection. Later, Gwin testified that he saw Clement leave the warehouse, and he knew it was Clement because Pilley told him so over the transmitter. The trial court sustained the objection to this testimony on the ground that it was hearsay.
By this assignment of error the defendants assert that the court erred in allowing Gwin to identify "certain persons". The record reflects that the court only allowed one identification over objection, that of Hennigan. Nothing in that identification indicates that it was based on hearsay. Gwin was sufficiently familiar with Hennigan to identify him at trial.
This assignment of error lacks merit.
Assignment of Error Number 22
This testimony was offered to show what Gwin said to Clement when he contacted him at home. Gwin testified relative to the discussion leading up to his giving Clement the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defense objected to the following testimony of Gwin:
"I advised Mr. Clement that what I was talking about was the $100.00 campaign contributions which the employees of the Lake Charles warehouse were being pressured into giving...". (Tr. 826)
This testimony was offered merely to establish what words were spoken, not for proof of their content. It was not hearsay.
This assignment of error lacks merit.
Assignment of Error Number 33
Pilley testified that he turned the microphone on at one point to record a conversation relating to "complaints about having to give money...." (Tr. 1071) The trial court correctly overruled defendants' hearsay objection. The testimony was not offered to prove the truth of the assertion, but merely to lay a foundation for the admission of the tape recording.
This assignment of error lacks merit.
Assignment of Error Number 38
Pilley testified that co-workers Reeves said that, if everyone "stuck together", the grand jury could not prove a thing. (Tr. 1166) The trial court correctly overruled defendants' hearsay objection, noting that *230 Reeves' statement was not offered to prove its truth, but merely to show that it was said and overheard.
This assignment of error lacks merit.
Defendants' remaining hearsay objections were properly overruled because they fell into one of the hearsay exceptions. LSA-R.S. 15:447 and 15:448 allow the admission of hearsay evidence when it forms part of the res gestae of a crime.[6] The following hearsay statements were properly admitted under this exception.
Assignment of Error Number 20
Fred Gwin testified that on October 17, 1979, he observed Hennigan and Pilley in the doorway of the voting machine warehouse. Pilley appeared to be transferring separate items to Hennigan, one after another, from his left hand, and Gwin could hear Pilley counting out money over the transmitter. The trial judge properly overruled the objection to Gwin's testimony as to what Pilley "appeared" to be doing. Gwin was competent to testify to what those actions appeared to be, based on his own everyday common experience. Gwin's testimony that he heard Pilley counting money, although hearsay, was admissible. This activity by Pilley and Hennigan formed a "necessary incident" of the criminal act and therefore falls within the res gestae exception to the hearsay rule.
This assignment of error lacks merit.
Assignments of Error Number 26 and 28
These assignments of error involve the testimony of Alvin Pilley. Pilley testified that at a meeting in Baton Rouge it was stated that employees of the Department of Elections were expected to buy tickets to a campaign testimonial dinner. Later, Pilley testified that the defendant, Hennigan, instructed him to fill out a false travel voucher in order to recoup his campaign contribution.
The hearsay objections to this testimony were properly overruled. These statements were the "instructive, impulsive, and spontaneous words" of the participants and constituted "immediate concomitants" of the criminal act. LSA-R.S. 15:447 and 15:448. This testimony was properly admitted under the res gestae exception to the hearsay rule.
These assignments of error lack merit.

ARGUMENT NUMBER IV
Assignments of Error Number 29 and 36
Defendants contend that the trial judge erred in overruling their objections to the relevancy of certain evidence.
Pilley said State Exhibit 19, a travel voucher, was intended to reimburse him for a campaign contribution. Pilley testified that this voucher was initialed and approved by Clement. Hennigan informed him that fraudulent expense claims on his travel vouchers could reimburse his campaign contributions.
Pilley testified that he was fraudulently reimbursed by the state for a trip to Shreveport with Charles Reeves. Defendants contend that neither of these items of evidence was relevant to their perjury prosecution.
Evidence must be relevant to a material issue. LSA-R.S. 15:435. LSA-R.S. 15:441 defines relevant evidence:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent."
*231 LSR-R.S. 15:442 provides that relevance must be determined by the purpose for which evidence is offered.
The grand jury indictment of Clement alleged that he:
"COMMITTED PERJURY AT A GRAND JURY HEARING BY TESTIFYING AS FOLLOWS, DURING AN INVESTIGATION INTO ALLEGATIONS OF ILLEGAL POLITICAL ACTIVITY, THEFT AND FALSIFICATION OR OFFICIAL TRAVEL VOUCHERS BY EMPLOYEES OF THE LOUISIANA DEPARTMENT OF ELECTIONS AND REGISTRATIONS:
"Question: Now, do you have any knowledge about any travel expense vouchers that were falsified and were submitted to the state for payment under your initials?
"Answer: No. I really don't. I mean, I'm ... I'm serious. I don't know.
"Question: About any time. Not only talking about the 26th now, I'm talking about any time?
"Answer: Right." (Tr. 28)
Count two of the grand jury indictment of Hennigan alleged that he:
"COMMITTED PERJURY AT A GRAND JURY HEARING BY TESTIFYING AS FOLLOWS, DURING AN INVESTIGATION INTO ALLEGATIONS OF ILLEGAL POLITICAL ACTIVITY, THEFT AND FALSIFICATION OF OFFICIAL TRAVEL VOUCHERS BY EMPLOYEES OF THE LOUISIANA DEPARTMENT OF ELECTIONS AND REGISTRATION:
"Question: Specifically, if a contribution of $100. was given by an employee and whether there was at any time discussed in your presence or whether you approved in any way, even passively, for the return of that money through submitting false travel vouchers to the State and being reimbursed for same?
"Answer: No way.
"Question: You would not allow that to happen?
"Answer: No, not with knowledge of it.
"Question: Was that ever discussed in your presence?
"Answer: No." (Tr. 28)
The challenged evidence was offered to prove that the defendants' grand jury testimony was perjury. It was relevant, therefore, because it tended to show "the commission of the offense and the intent." LSA-R.S. 15:441.
These assignments of error lack merit.

ARGUMENT NUMBER V
Assignment of Error Number 31
Defendants assert that the trial judge erred in allowing Pilley to testify that Cooley made a $100 campaign contribution to Hennigan. Defendants assert that this was merely an unfounded opinion on Pilley's part. LSA-R.S. 15:463 provides:
"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
Pilley testified that he saw Cooley place $100 in a desk drawer and Hennigan retrieve the money. He also saw Hennigan give Cooley a ticket. The trial judge admonished Pilley to testify only as to what he knew. The admonishment to Pilley not to make any inferences from the observed actions indicates the judge's awareness that the witness' opinions and assumptions were inadmissible. There was no error.
This assignment of error lacks merit.

ARGUMENT NUMBER VI
Assignment of Error Number 14.
Defendants contend that the trial court erred in allowing the state to introduce the entire grand jury testimony of each defendant. Defendants wanted to limit the transcript to the testimony alleged to be perjured.
Testimony taken before a grand jury is admissible in a prosecution for perjury. LSA-C.Cr.P. art. 434. State v. O'Blanc, 346 So.2d 686 (La.1977); State v. Ivy, 307 So.2d *232 587 (La.1975); State v. Terrebonne, 256 La. 385, 236 So.2d 773 (1970). The state maintains that the entire transcript was necessary to prove intent and materiality, two elements of the crime of perjury as defined in LSA-R.S. 14:123. The trial court admitted the entire testimony for this reason and to allow the state to establish a foundation for admission of the perjured portions of testimony.
LSA-R.S. 15:450 provides:
"Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."
Defendants note that a defendant may waive the benefits of this protective statute and allow only part of a statement or confession to be introduced. State v. Mullins, 353 So.2d 243 (La., 1977); State v. Snedecor, 294 So.2d 207 (La., 1974). Defendants assert that their objections to admitting the entire testimony amounted to a choice that only part of it be admitted.
Defendants have not demonstrated that they were prejudiced by the testimony. They do not allege that there was any reference to inadmissible other crimes evidence as was the case in Mullins and Snedecor, supra. Therefore, the trial court's ruling, admitting the entire grand jury testimony into evidence, was not reversible error.
This assignment of error lacks merit.

ARGUMENT NUMBER VII
Assignment of Error Number 13
Defendants assert that the trial court erred in failing to dismiss the charges against them on the basis of illegal actions before the grand jury. They contend that at certain times two witnesses were before the grand jury at the same time. LSA-C. Cr.P. art. 433, provides limitations as to who may be present at sessions of the grand jury.
Defendants assert that both Alvin Pilley and Fred Gwin were in the grand jury room when the taped conversations were being played. The record does not support this allegation. The testimony of the grand jury person and the court reporter indicates that Gwin was present when the tapes were played. There is no indication that Pilley was also present. The record does not support defendants' assertion that two witnesses were before the grand jury simultaneously.
It is also assigned as error that there was no transcript of the playing of the recorded tapes. Defendants have made no showing which would have entitled them to obtain a copy of such a transcript if one had been made and have shown no prejudice as a result of the lack of such a transcript.
Defendants failed to include these grounds for dismissal in their motion to quash the indictment.
This assignment of error lacks merit.

ARGUMENT NUMBER VIII
Assignments of Error Number 25, 27, 30, 32 and 37
Defendants contend that the trial court erred in admitting testimony concerning statements made by the defendants. They assert that these statements are inadmissible because in its discovery answers the state failed to disclose its intent to use such evidence at trial.
Assignment of Error Number 25
Pilley was allowed to testify as to statements made to him by Hennigan while they were in Crowley, Louisiana, on business. Defendants objected because the state's discovery answer referred to statements made to Pilley "on a trip to Crowley, Louisiana." (Emphasis added) They contend that this answer does not encompass statements made after arriving in Crowley.
In its Notice of Intent, filed in accordance with LSA-C.Cr.P. art. 768, on February 13, 1980, the state notified defendants of its intent to use the "oral statement of Wayne D. Hennigan to Alvin E. Pilley in Crowley in July, 1979." This notice was filed after *233 the allegedly misleading answer given in response to defendants' first discovery motion and superseded it.
This assignment of error lacks merit.
Assignment of Error Number 27 has been abandoned.
Assignment of Error Number 30
The state's answer to defendants' initial discovery requests listed the travel expense vouchers submitted by Pilley. The initials "G.C." appeared on the expense voucher. Pilley testified that these initials were those of Guy Clement. Defendants assert that since this document contains Clement's initials it is the equivalent of an inculpatory statement and its admission required compliance with LSA-C.Cr.P. art. 768.
In its response to defendants' initial discovery motions, the state notified defendants of the existence of the voucher and of its intention to introduce it at trial. The voucher was at all times available to the defendants for inspection. Defendants were not denied the opportunity of discovering that the initials "G.C." appeared on the voucher.
This assignment of error lacks merit.
Assignment of Error Number 32
Defendants object to admission of a statement made to Pilley by Hennigan on October 17, 1979. Defendants contend that any statements in the tape recordings were inadmissible because the state did not include the taped conversations in its answer to defendants' question seeking a list of all statements by defendants which the state intended to introduce into evidence. In its initial discovery response, the state advised the defendants of the existence of the recorded conversations and furnished transcripts to the defendants. Additionally, in its Notice of Intent, filed on February 13, 1980, the state informed the defendants that it intended to use their inculpatory statements made on October 17, 1979. This notice of intent gave the defendants adequate notice of the state's intent to use their October 17 statements.
This assignment of error lacks merit.
Assignment of Error Number 37
Pilley testified about statements which Hennigan made in the presence of a number of people at the Lake Charles voting machine warehouse on November 26, 1979. The state's answer to the defendants' discovery motion and its Notice of Intent listed "statements made to Alvin E. Pilley at the Lake Charles Warehouse...." Defendants contend that this answer did not cover the introduced statement because it was not proven that Hennigan's remark was directed to Pilley.
The state's answer could more precisely have identified the statement as having been made in Pilley's presence rather than "to" Pilley. However, the state's response was not inaccurate or misleading. The hypertechnical interpretation urged by the defendants should not be applied.
This assignment of error lacks merit.

ARGUMENT NUMBER IX
Assignment of Error Number 9
Defendants contend that the trial court erred in ruling that the defense should bear the burden of proving that the conversations taped by Pilley should be suppressed. Defendants rely on LSA-C.Cr.P. art. 703D which provides as follows:
"On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant."
Defendants assert that the taped conversations constitute the type of statements contemplated by the terms of article 703D and that the state had the burden of proving the admissibility of the tapes.
The term "inculpatory statement", as used in LSA-C.Cr.P. art. 768 has been deemed to refer to out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events. State v. Labostrie, *234 358 So.2d 1243 (La.1978); State v. Miles, 339 So.2d 735 (La.1976); State v. Brumfield, 329 So.2d 181 (La., 1976); State v. Williams, 326 So.2d 815 (La.1976). This same definition should apply to the term "statement" as used in LSA-C.Cr.P. art. 703D.
The taped statements which defendants sought to suppress were not made after the completion of the crime with which the defendants were charged. They were made before the perjury was committed. These statements were incident to the criminal conduct and formed part of the res gestae. Since these conversations were not "confessions or statements" within the meaning of LSA-C.Cr.P. art. 703D, the trial court did not err in placing the burden on the defendants at the suppression hearing.
This assignment of error lacks merit.

ARGUMENT NUMBER X
Assignments of Error Number 7, 11, and 23
Defendants maintain that the trial court erred in failing to grant various defense motions which were based on the contention that defendants' Fifth and Sixth Amendment rights were violated. These arguments concern defendants' statement made in three different areas; each will be discussed separately.
CONVERSATIONS RECORDED BY PILLEY
Assignments of Error Numbers 7 and 11
Defendants rely on LSA-Const. art. I, Sec. 13, which provides in pertinent part as follows:
"When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel."
Defendants also rely on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Miranda and Escobedo stand for the proposition that any person subject to custodial interrogation by police must be informed of his Fifth and Sixth Amendment rights.
The defendants contend that Pilley was acting just like a police officer and that he "detained" them by recording their conversations. They assert that Pilley had a duty to advise them of the rights enumerated in LSA-Const. Art. I, Sec. 13. The jurisprudence which has defined "detained" requires that the defendant be deprived of his freedom in a significant way. State v. Menne, 380 So.2d 14 (La.1980); State v. Collins, 370 So.2d 533 (La.1979); State v. Jackson, 362 So.2d 1082 (La.1978). Defendants were not "detained" by Pilley as that word is used in LSA-Const. Art. I, Sec. 13. Nor were the defendants subject to "custodial interrogation", a standard which they admit is stricter than "detained". Therefore, Pilley's failure to advise defendants of their constitutional rights does not require suppression of the tape recorded conversations.
These assignments of error lack merit.
GRAND JURY TESTIMONY
Assignments of Error Number 7 and 11
Defendants contend that they did not understand their rights under the Fifth and Sixth Amendments to the United States Constitution and Louisiana Constitution, Art. I, Sec. 13. Therefore, their waiver of these rights before the grand jury was not knowing and voluntary. They assert that the trial court erred in refusing to suppress their grand jury testimony.
The record reflects that the District Attorney carefully explained to each all of his constitutional rights in detail prior to each defendant's testimony, and that each defendant waived these rights prior to testifying.
These assignments of error lack merit.
CLEMENT'S STATEMENTS TO INVESTIGATOR GWIN
Assignment of Error Number 23
Fred Gwin went to Guy Clement's home in order to interview him pursuant to his investigation into allegations of wrongdoing *235 at the Lake Charles voting machine warehouse. Defendants assert that the trial court erred in allowing Gwin to testify about statements which Clement made to him at Clement's home. (Tr. 820-833) They contend that Gwin failed to advise Clement of his Miranda rights. The trial court concluded that the statements were admissible because they were spontaneous utterances. (Tr. 824)
Clement's statement was properly admitted. Clement was not subject to a "custodial interrogation" and therefore Miranda was not applicable. Nor was Clement "detained" within the meaning of LSA-Const. Art. I, Sec. 13. Clement was not taken into custody or deprived of his freedom of action in any significant way. State v. Jolla, 384 So.2d 370 (La.1980).
This assignment of error lacks merit.

ARGUMENT NUMBER XI
Assignment of Error Number 10
By this assignment of error defendants contend that the electronic recording conducted by Pilley was a per se violation of defendants' rights under the Louisiana and United States Constitutions. Defendants urge the overruling of State v. Petta, 359 So.2d 143 (La.1978). Petta upheld the admissibility of tape recordings of defendant's telephone conversation with a government witness who consented to have the conversation recorded. The following observation made in Petta remains valid:
"In United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) the Supreme Court held that the Fourth Amendment did not require exclusion of evidence of conversations between the defendant and a government informant which were monitored by government agents through a radio transmitter concealed on the informant. The Court reasoned that the defendant had no expectation of privacy that the conversation would not be passed on to police agents." 359 So.2d at 145.
This assignment of error lacks merit.

ARGUMENT NUMBER XII
Assignments of Error Number 24, 34, 35, 40, and 41
Defendants assert that the trial court erred in admitting into evidence a tape log of the conversations recorded by Pilley, the tapes themselves and the transcripts.
TAPE LOG
Assignment of Error Number 24
Sergeant Montz of the Louisiana State Police Criminal Intelligence Section, maintained a log of the conversations recorded by Pilley. The defendants contend that this log is inadmissible hearsay. LSA-R.S. 15:434. Sergeant Montz described the log as follows:
"The log describes the location, the date, the location (sic), the type of equipment I used on that particular day, the tape I used, the frequency I used, the tape speed, the time it was installed and initialled by me when it was started, stopped, removed." (Tr. 922)
Defendants contend that the log contained hearsay based on what Montz heard over the transmitter. One representative entry to which defendants objected read as follows:
"Pilley signing trip expense sheets, approximately 1:47 P.M., tape reading .044, time 2:04...." (Tr. 981)
Montz testified that the purpose of these identifying notations was to allow someone playing the tapes to locate a particular section.
These out-of-court statements were not offered to show the truth of the facts recited therein. Therefore, they were not hearsay. State v. Martin, supra. The tape log was properly admitted into evidence.
This assignment of error lacks merit.
TAPED CONVERSATIONS RECORDED BY ALVIN PILLEY
Assignments of Error Number 34 and 40
Defendants contend that the tapes of the conversations secretly recorded by Alvin Pilley were inadmissible for a number of reasons.
*236 In their discovery motions the defendants asked the state to list any oral statements which would be offered into evidence. The state's answer did not list the conversations which were recorded by Pilley on October 17 and 29, 1979, although the state did supply copies of the transcripts of those conversations in reply to a question about its possession of such statements. In its Notice of Intent, made in compliance with LSA-C.Cr.P. art. 768, the state notified the defendants of its intention to introduce these tapes.
Defendants contend that the trial court erred in allowing the state to introduce these tapes after it failed to list them in its discovery answer. LSA-C.Cr.P. art. 729.5 authorizes a trial court to prohibit the state from introducing evidence as a penalty for discovery violations. This is only one of the remedies available, however. That article vests the trial court with wide discretion. The trial court did not abuse its discretion in allowing the tapes to be admitted. The defendants were notified of the existence of the tapes by the state's discovery answer. A short while thereafter they were notified of the state's intent to introduce those tapes as evidence. The defendants were not prejudiced by the admission of the tapes.
Defendants also contend that the taped conversations were inadmissible hearsay as to every person except the individual defendant who may be speaking on the tape. As noted above, these taped conversations were part of the res gestae of the crime and were admissible as an exception to the hearsay rule. LSA-R.S. 15:447 and 15:448.
Defendants next contend that the tapes were inadmissible because the state did not lay a proper foundation for their admission.[7] Specifically, defendants contend that the state failed to establish the audibility and continuity of the tapes and that the state failed to identify the voices on the tapes.
Defendants contend that the audibility of the tapes was so low as to render them inadmissible. U. S. v. Starks, does not require proof of audibility as a requirement for admissibility. See Footnote 7, supra. The question of audibility is directed toward the weight the tapes are to be given. In any event, a decision about the audibility of the tapes rests within the trial judge's sound discretion. No showing has been made to indicate that the trial court abused his discretion in allowing the tapes to be admitted.
Defendants also assert that the continuity of the tapes was not established. Pilley testified that he turned the microphone off when he was not in the presence of the defendants or when no conversation was taking place. Defendants rely on State v. Melerine, 236 La. 881, 109 So.2d 454 (1959), contending that recordings are inadmissible if the microphone is turned off during the conversation which forms the basis of the charge. Defendants further assert that Pilley's practice of turning off the microphone violated LSA-R.S. 15:450, which requires that a defendant's entire statement be introduced in order to give him the benefit of any exculpatory or explanatory remarks.
*237 Sergeant Montz's testimony with regard to his care and handling of the tapes establishes that no deletions or omissions were made in the tapes. Furthermore, Pilley's testimony establishes that he only turned the microphone off when he was not in the defendants' presence or when no conversation was taking place. The record establishes that Pilley recorded the entirety of the conversations which formed the basis of the charge. A sufficient showing was made of the continuity and lack of deletions of the tapes.
Finally, the defendants assert that the identification of the various voices on the tapes was inadequate. Sergeant Montz testified that he made cassette copies of the original tapes under controlled conditions. Transcripts of these tapes were prepared from this copy by a secretary in the Attorney General's office, but no indication was made as to who was saying what. Pilley listened to the tapes while reviewing these transcripts. He reviewed the transcripts for accuracy and made corrections. Pilley also indicated next to each statement the initials of the person who was speaking. Pilley was quite familiar with the voices of the various individuals who appeared on the tape. A final copy of the transcript was prepared and Pilley compared this copy to the cassette tape. Pilley testified that this transcript was an accurate version of what was on the tape. This final transcript was introduced at trial for the purposes of identifying the voices contained in the recorded conversations. The procedure satisfactorily identified the voices contained on the recorded tapes.
These assignments of error lack merit.
TRANSCRIPTS OF THE CONVERSATIONS RECORDED BY PILLEY
Assignments of Error Number 35 and 41
Defendants assert that the trial court erred in admitting into evidence the transcripts of the conversations recorded by Pilley. A number of the defendants' objections to these transcripts are the same as those discussed and resolved above under the issue of voice identification.
Defendants contend that these transcripts were inadmissible because the state failed to establish a proper foundation of chain of custody and preparation of the transcript. Sergeant Montz testified that he made a copy of the original tapes on cassette tapes under controlled conditions. The Attorney General's office prepared a rough draft of the transcripts from the cassette tape and made corrections. Pilley supplied the voice identifications. Pilley then compared the completed transcript to the tapes and concluded that it was an accurate version of the recorded conversations. This evidence produced by the state sufficiently demonstrates the accuracy and integrity of the transcripts and the voice identifications. The trial court committed no error in allowing the transcripts to be admitted. The question of accuracy of the transcripts was for the trier of fact to decide. Defendants never objected to specific inaccuracies in the transcripts, and no showing has been made that the trial judge erred in admitting the transcripts.
Defendants contend that the admission of the transcripts violated the best evidence rule. LSA-R.S. 15:436 provides:
"The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced."
State v. Alexander, 328 So.2d 144 (La., 1976), held that no error was committed in denying defendant's request to introduce a transcript of his recorded confession into evidence because the recording was audible and there was no necessity for admitting the transcript.
In this case there clearly was a necessity for the introduction of the transcript. The recorded conversations involved a number of persons and the transcript no doubt assisted the trier of fact in identifying who was speaking at any given time. The jurisprudence is clear that the introduction of transcripts, along with tape recordings, for the convenience of the trier of fact, does not violate the best evidence rule. State v. Roche, 341 So.2d 348 (La., 1976); State v. Snedecor, 294 So.2d 207 (La., 1974).
These assignments of error lack merit.

*238 ARGUMENT NUMBER XIII
Assignment of Error Number 21
Fred Gwin testified that he was given an exact copy of the actual tape recordings. Defendants objected on the ground that Gwin had no personal knowledge of the making of the tape copy. The trial judge admitted the statement noting that Gwin's lack of personal knowledge would go to the weight of the evidence. Defendants assign error to this ruling.
Defendants have not asserted what harm was caused by this alleged error. Sergeant Montz himself testified that he made an exact copy of the actual tape and gave it to the Attorney General's office. Gwin's testimony that the cassette was an actual copy was repetitious. Defendants have not shown any harm from this alleged error.
This assignment of error lacks merit.

ARGUMENT NUMBER XIV
Assignment of Error Number 39
Defendants contend that the trial court erred in allowing Alvin Pilley to identify initial symbols on the transcript because Pilley did not prepare the transcript himself. However, Pilley identified each line in the transcript, and supplied the initials to represent persons who were speaking on the tape. Pilley was in the best position to testify as to the meaning of those initials.
This assignment of error lacks merit.

ARGUMENT NUMBER XV
Assignment of Error Number 45
Louisiana State Police investigator Gary Morford testified that he ordinarily destroyed any conversations which he recorded during the course of an investigation which proved fruitless. Defendants assert that the trial court erred in not dismissing all charges against them because of Morford's actions.
Defendants have not shown, or even alleged, that they were prejudiced in any way by the failure to preserve tape recordings of conversations which proved irrelevant. In the absence of any allegation that the state destroyed exculpatory evidence which might have created a reasonable doubt the trial court's failure to dismiss was not error. See, e. g., State v. Sylvester, 388 So.2d 1155 (La., 1980).
This assignment of error lacks merit.

ARGUMENT NUMBER XVI
Assignment of Error Number 42, 43, and 44
Defendants contend that the trial court erred in finding that there was sufficient evidence to support a guilty verdict beyond a reasonable doubt. Defendants' grand jury testimony and their recorded conversations are sufficient to convince any rational fact finder beyond a reasonable doubt that the defendants committed every element of the offense of perjury. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
These assignments of error lack merit.
For the foregoing reasons the conviction and sentence of defendant, Larry Cooley, is reversed and the case is remanded to the district court with instructions to dismiss the indictment. The convictions and sentences of the other defendants, Wayne D. Hennigan and Guy Clement, Jr., are affirmed.
AFFIRMED.
DIXON, C. J., concurs, disagreeing with the treatment of Assignment # 1.
NOTES
[*] Judges J. Burton Foret, Jimmy M. Stoker and P. J. Laborde of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] The record reflects that the District Attorney informally furnished these addresses to the defendants in the first week of February, 1980. (Tr. 383)
[2] See LSA-C.Cr.P. art. 716 et seq.
[3] See State v. Martin, supra, 376 So.2d at 304.
[4] LSA-Const. Art. I, Sec. 17; LSA-C.Cr.P. art. 780.
[5] See Official Revision Comment (d) to LSA-C. Cr.P. art. 780. See Also State v. Catanese, 385 So.2d 235 (La., 1980).
[6] LSA-R.S. 15:447 provides:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
LSA-R.S. 15:448 provides:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
[7] Defendants rely on the decision in U. S. v. Starks, 515 F.2d 112 (3rd Cir. 1975) which outlines the federal requirements which must be met to establish a foundation for the admission of a sound recording:

"`A review of the authorities leads to the conclusion that, before a sound recording is admitted into evidence, a foundation must be established by showing the following facts:
"`(1) That the recording device was capable of taking (sic) the conversation now offered in evidence.
"`(2) That the operator of the device was competent to operate the device.
"`(3) That the recording is authentic and correct.
"`(4) That changes, additions or deletions have not been made in the recording.
"`(5) That the recording had been preserved in a manner that is shown to the court.
"`(6) That the speakers are identified.
"`(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.' United States v. McKeever, 169 F.Supp. 426, 430 (S.D.N.Y. 1958)." 515 F.2d at 121, footnote 11.