452 So.2d 186 (1984)
STATE of Louisiana
v.
Danny W. STEWART.
No. KA-0960.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1984.
Rehearing Denied July 24, 1984.
Writ Denied September 20, 1984.
*188 Harry F. Connick, Dist. Atty., John H. Craft, Susan Scott Hunt, Asst. Dist. Attys., New Orleans, for appellee.
William W. Miles, William J. O'Hara, III, Lemann, O'Hara & Miles, New Orleans, for appellant.
Before KLEES, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Appellant, Danny W. Stewart, was charged by bill of information with armed robbery and conspiracy to distribute marijuana in violation of La.R.S. 14:64[1] and R.S. 40:979.[2]
Appellant pled not guilty to both counts. On February 18, 1983, a twelve member jury found appellant not guilty on the charge of armed robbery but guilty on the charge of conspiracy to distribute marijuana. On February 24, 1983, the trial court denied appellant's Motion in Arrest of Judgment and sentenced him to serve five years at hard labor. Later, the state filed a multiple bill against appellant charging him as a multiple offender. On May 20, 1983, his February 24th sentence was set aside and he was re-sentenced as a multiple offender to serve ten years at hard labor. Appellant has appealed his conviction and sentence asserting eight specifications of error, as follows:
1) The court committed reversible error in denying appellant the information requested in his Bill of Particulars *189 pertaining to the identity of all persons arrested on the date of the alleged crime;
2) The court committed reversible error in allowing the introduction into evidence of State's Exhibit S-2, when the state had failed to notify appellant of the existence of these items despite a pretrial request made by appellant;
3) The court committed reversible error in allowing testimony of an alleged previous drug transaction involving the appellant, and further, in failing to grant appellant's Motion for a Mistrial based on this testimony;
4) The court committed reversible error in allowing improper and highly prejudicial rebuttal testimony by the state;
5) The court committed reversible error in denying appellant's Motion to Quash the Bill of Information which Motion was based on the State's failure to allege or charge appellant with a specific overt act done in furtherance of the alleged conspiracy;
6) The court committed reversible error in denying appellant's post-trial motions for relief from the jury's verdict;
7) The verdict of the jury returned herein was contrary to the law and evidence;
8) The court committed reversible error in sentencing appellant as a multiple offender in that there was no showing that the prior pleas, upon which the sentence was based, were of such a nature as to be the basis for the imposition of an additional sentence.[3]
FACTS:
On June 11, 1982, Officers Adams, Marino, Goodey, Lee, Vappie and Johnson of the Special Operations Division of the New Orleans Police Department were assigned to an undercover operation. The objective was to purchase drugs from suspected distributors.
On information received from a confidential informant, the officers devised a plan whereby Officer Adams would attempt to purchase seventy-five pounds of marijuana from a man named Danny who lived at 3313 St. Claude Avenue. At approximately 5:00 p.m. on the date in question, the officers set up surveillance and Officer Adams knocked on the door at that address. Adams testified that appellant, Danny Stewart, admitted him to the house. They discussed the proposed purchase and Stewart's cut of the deal. Stewart then told Adams he would have to make a telephone call to set up the deal and both men proceeded to a nearby store to use the telephone. While Stewart spoke on one phone, Adams used another phone to contact the officers on surveillance, to inform them that he would raise the trunk lid on his car to signal them to move in when the deal was concluded. Both men then returned to Stewart's house. Stewart informed Adams that David Anderson would bring the drugs to the house. Soon afterward, Anderson arrived and the men discussed the proposed drug deal. Anderson then left. Stewart indicated that he had to use the phone again, and both returned to the store. Adams sat on the neutral ground outside while Stewart made his call. Both men then returned to the front of the house. Shortly thereafter, Anderson returned and the trio re-entered Stewart's house.
Once inside, Anderson drew a gun, ordered Adams to stand against a wall, threw Stewart a rope to tie up Adams and removed Adams' car keys from his pocket. When Adams tried to free himself, Stewart told him to keep his hands together while threatening Adams with the gun. He (Anderson) then struck Adams with the gun, and then put it to Adams' head, threatened to kill him and ordered him to "beg" for his life. He then picked up a pillow case and tried to put it over Adams' head. When Adams informed Anderson that others *190 would be coming soon, Anderson told Adams he would kill him later and then left. Adams freed himself from the ropes and attempted to pursue Anderson. Stewart blocked his path. A scuffle ensued, Adams broke free and ran outside in time to see Anderson drive off in his (Adams') car.
Officers Marino and Goodey testified that soon after Adams and Stewart returned from making the first phone call, they observed a blue car with two people inside. The car circled the block and stopped. They observed Anderson leave the car and enter Stewart's house, remain inside a short while, and then exit and drive away in the blue car. Adams and Stewart then went to make a second phone call. When they returned to the house, they sat outside talking until the blue car appeared again, this time containing three people. The car parked around the corner, and Anderson exited the car and joined Adams and Stewart. The three men re-entered the house.
Later, the officers observed Anderson run out of the house and jump into Adams' car. He pulled off and was joined by the blue car. Officers Marino and Goodey gave chase and eventually captured him when he wrecked Adams' car.
Meanwhile, Officers Johnson and Vappie stopped the blue car and detained the occupants. No marijuana was found in the blue car. The officers then returned to Stewart's house.
During the confusion, Stewart slipped away from the scene. He was arrested five months later by Officers Marino and Goodey pursuant to a tip from a confidential informant.
Adams testified that approximately one hour and fifteen minutes elapsed between the time he first entered Stewart's house and the time he was bound with the rope. Also present were Stewart's girlfriend and an older man in possession of drugs. During this time, Stewart smoked several "joints". Anderson seemed to be under the influence of drugs.
Adams stated that Stewart never touched Anderson's gun while Adams was threatened, and although he made arrangements to go to Stewart's house to buy the drugs, he never made the arrangements directly with Stewart.
Anderson testified that Stewart did not telephone him on June 11, 1982 but that he, (Anderson), merely happened to stop at Stewart's house on that day. He stated he was under the influence of preludin when he entered Stewart's house and that only he and Adams discussed the proposed drug deal. He stated that Adams wanted as much marijuana as he could supply because Stewart was unable to supply the quantity Adams wanted. Needing money for legal problems, he testified that he planned to set up the deal and then rob Adams. He maintained that he had no intention of supplying Adams with marijuana. He told Adams he had to obtain the drugs from another source and then left. When he returned, Adams was outside the house. He informed him that he could not complete the deal. Adams insisted he wanted the marijuana and Anderson left again. Ten minutes later he returned. Adams and Stewart were now inside the house. He entered only intending to rob Adams. He stated that when he pointed his gun at Adams, Stewart lunged at him. He then held the gun on both men, threw Stewart a rope and ordered Stewart to tie up Adams. Anderson then fled the house. He got into Adams' car, looked down and noticed Adams' police radio on the seat. When he turned the corner, he noticed the other officers chasing him.
Anderson later identified the two men in the blue car as "Frog" and "Alvin". He maintained he was beaten by the police and forced to sign a statement implicating Stewart in his plan to rob Adams.
Marilyn Metzler, Stewart's girlfriend, testified that she lived with Stewart at the time of the offense. She was present part of the time that Adams was at the house but was at the grocery store at the time of the alleged robbery. While walking back from the store, she saw Anderson exit the *191 house, get into a red car and drive off. Then she saw Adams and Stewart come out of the house. She denied there were drugs in the house. She said she moved out of the house that night and did not see Stewart for a long time after.
Appellant, Danny Stewart, testified that he met Adams about a month prior to the incident at which time Adams tried to buy drugs from him. He stated that on the day in question, Anderson stopped by his house late in the morning and Adams arrived much later, asking to buy the drugs. Stewart maintained that although he may have smoked a few "joints", there were no other drugs in the house. He stated that Adams left on his own and returned before Anderson re-appeared. He denied calling Anderson. He contended that while all three of them were outside, he told them that he did not want them to conduct the "deal" in his house, but they went inside anyway. Once inside, Anderson put his gun in Adams' face and ordered both of them to lie on the floor. Anderson then took Adams' car keys and ordered him to tie up Stewart, changed his mind and ordered Stewart to tie up Adams. Then Anderson left.
Stewart further testified that he tied Adams' hands loosely which allowed him to free himself quickly. He said that by the time he got outside, Anderson was already gone. Adams left to use the telephone. Then he saw Anderson drive past the house with the officers in pursuit. Adams joined the chase. It was then that Stewart left the scene because he feared he would be charged in Anderson's robbery of Adams. He subsequently stayed with his brother in Pearl River, Mississippi and later returned to New Orleans. He testified he had no prior drug convictions nor convictions for crimes involving drugs but had two burglary convictions in Mississippi.
On rebuttal, Officers Goodey and Marino denied beating Anderson or seeing anyone else beat him. They stated Anderson was advised of his rights both in English and Spanish and maintained that the written statement taken from Anderson was verbatim.
Officer Adams testified he discussed the drug deal with Stewart before June 11th and that Stewart never refused to sell him drugs. He also refuted Stewart's claim that he was threatened by Anderson.
ASSIGNMENT OF ERROR 1
Appellant contends that he was denied his constitutional right to call and examine witnesses due to the failure of the state to identify the two men who were in the blue car with Anderson, arrested and later identified by Anderson as "Frog" and "Alvin".
In his Bill of Particulars, appellant requested the identity of any person arrested and/or charged in connection with the June 11th incident. The trial judge sustained the State's refusal to supply this information. Appellant maintains that these witnesses could have corroborated his and Anderson's claims that there was no agreement between them to distribute marijuana to Adams. Appellant argues that these witnesses were involved in the conspiracy to rob Adams and that under State v. Rogers, 375 So.2d 1304 (La.1979), the state must disclose in its answers to the Bill of Particulars the identities of any unindicted co-conspirators.
Assuming arguendo that the men were unindicted co-conspirators in the plan to rob Adams, appellant's argument still falls. He would have no right to learn their identities via an application for bill of particulars as per Rogers, supra, because he was never charged with conspiracy to rob Adams.
A defendant does not have a right to the names and addresses of witnesses. However, the trial court has considerable discretion in determining whether such information should be supplied. See, State v. Walters, 408 So.2d 1337 (La.1982), and the cases cited therein. Even less support exists for allowing the defense access to the identity of persons not called as witnesses, nor named as co-conspirators. This would be especially so where the actions *192 are only hypothetically related to the transaction with which a defendant may not use an application for bill of particulars as a "fishing expedition" to discover details of the state's case. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Marcal, 388 So.2d 656 (La.1980); U.S.App. dismissed 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834, reh. den. 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984; State v. Boyd, 359 So.2d 931 (La.1978). This assignment of error is without merit.
ASSIGNMENT OF ERROR 3
Appellant contends that the trial court erred by denying his request for a mistrial due to repeated references to his prior criminal activity. The testimony in question is that of Officers Marino and Adams.
Officer Marino testified that as a result of information received from a confidential informant, the police set up surveillance in the 3300 block of St. Claude Avenue with the intention of purchasing seventy-five pounds of marijuana from a man named Danny.
In response to the prosecutor's question of what happened on June 11, 1982, Adams responded:
"After meeting the defendant on several occasions prior to that date, discussing the transaction that was supposed to take place on that particular date, bickering about the price of the drugs, the quantity that was to be delivered to me, where it was to be delivered ..."
Article 720 of the Code of Criminal Procedure, which requires the state to notify the defendant of intent to put on evidence of other crimes to show intent or system, specifically excludes matters which are considered res gestae.[4] Officer Adams' testimony clearly refers to conversations he had with appellant leading up to, and concerning the June 11, 1982 transaction which formed the basis of the conspiracy charge. As such, we are of the opinion that it forms part of the res gestae of the crime charged. It should also be noted that appellant in his direct testimony, also mentioned his prior meeting with Adams.
The statement of Officer Marino certainly cannot be construed as evidence of other crimes. He merely identified the nature and source of the information which prompted the surveillance and investigation of appellant.
This assignment lacks merit.
ASSIGNMENT OF ERROR 5
Appellant contends that the trial court erred in denying his Motion to Quash the Bill of Information for its failure to specify an overt act committed by him in furtherance of the conspiracy.
"The basic function of the specific indictment form is to inform the accused of the crime charged, reserving a recital of the details of the offense for the bill of particulars." State v. Hamilton, 334 So.2d 383 (La.1976). Reviewing the bill of information we note that it recites that "Danny Stewart ... on the eleventh day of June [1982] ... did willfully and unlawfully conspire with David Anderson to distribute marijuana." As written, the bill of information satisfies codal requirements for sufficiently charging a person with conspiracy. C.Cr.Pr. Arts. 464 and 465.
This assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 6 and 7
Appellant attacks his conviction on the grounds of insufficiency of the evidence presented at trial. Specifically, he contends the state failed to prove the existence of a conspiracy to distribute marijuana because there was no evidence that Anderson joined in the conspiracy, nor that appellant did an overt act in furtherance of the conspiracy. Appellant argues that a conspiracy cannot exist if there is "no common objective" among the alleged conspirators.
*193 When assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306, 310 (La.1982).
Appellant was charged with conspiracy to distribute marijuana in violation of R.S. 40:966, 40:979. Title 40 of the Revised Statutes does not define conspiracy. R.S. 14:26 defines criminal conspiracy as:
"A. Criminal conspiracy is the agreement of combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."[5]
The "overt act" need not be an illegal act, but merely an act done in furtherance of the conspiracy. State v. Richards, supra fn. 4 at 1317; State v. Rittiner, 341 So.2d 307, 317 (La.1976).
Officer Adams testified that appellant told him he would have to make a phone call to set up a deal, and the two men then left the house to use the telephone at a nearby store. Upon returning to appellant's house, appellant told Adams that Anderson would supply the drugs and that Adams could trust Anderson. These actions by appellant were sufficient to constitute the requisite "overt act" in furtherance of the conspiracy to distribute marijuana.
Appellant further contends that because Anderson never intended to sell Adams drugs but only to rob him, there could be no conspiracy. The elements of conspiracy can be proved either by direct or circumstantial evidence. State v. Brown, 398 So.2d 1381 (La.1981). The existence of a conspiracy between appellant and Anderson could reasonably be inferred by the jury from the fact that, following appellant's phone call, Anderson appeared and discussed the planned transaction. Notwithstanding appellant's denial that he contacted Anderson, or Anderson's denial that he was contacted by appellant, the jury was entitled to believe, based on the phone call and appearance of Anderson shortly thereafter, that contact between them took place and that as a result of this contact Anderson appeared at appellant's home to arrange the drug sale. Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of conspiracy to distribute marijuana proved beyond a reasonable doubt. These assignments of error are without merit.
ASSIGNMENT OF ERROR 8
Appellant contends that the trial court erred by adjudging him to be a multiple offender, thereby doubling his sentence as per R.S. 15:529.1.
At his May 20, 1983, multiple bill hearing, the state introduced certified copies of three Mississippi bills of indictment charging appellant with various burglaries. The state also introduced certified copies of appellant's Boykin forms and the court's judgment of August 25, 1977 on one burglary conviction and a minute entry of September 28, 1973 noting appellant, with counsel present, pled guilty of another burglary.
Appellant's attorney testified that although he requested copies of the transcripts of these guilty pleas, none existed nor could any be reproduced.
Appellant testified that he was the same Danny Stewart who pled guilty to these charges, admitted he was represented by counsel but contended that he did not remember being advised of any of his Boykin *194 rights in any case except his right to trial by jury.
The Louisiana Supreme Court in State v. Cressy, 440 So.2d 141 (La.1983) recently reiterated its holding in State v. Holden, 375 So.2d 1372 (La.1979), that when using a non-Louisiana guilty plea in an enhancement proceeding, the state is required to prove only that the defendant pled guilty with representation of counsel. The defendant then has the burden of proving that he did not waive his Boykin rights.
Here, the state established that appellant was represented by counsel when he pled guilty to both charges. Appellant could not remember being advised of most of his Boykin rights, but could not produce proof to substantiate his claims. Thus, he failed to carry the burden of proof that he was not properly advised of his Boykin rights. The trial court did not err in adjudging him to be a multiple offender. This assignment of error is without merit.
ERRORS PATENT
We have reviewed the record as to errors patent and have found none. La.C.Cr.Pr. Art. 920(2).
For the foregoing reasons appellant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] R.S. 14:64 provides:

A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
[2] R.S. 40:979 provides in part:

A. Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounded and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
Appellant was charged with conspiracy to distribute marijuana. R.S. 40:964 classifies marijuana as a Schedule I drug. R.S. 40:966 provides in part:
A. Manufacture; Distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule I.
The penalty for a conviction for distribution of marijuana is not more than ten years at hard labor and a fine of not more than $15,000.00.
[3] Appellant's assignments of error numbers two and four were not briefed and are deemed abandoned for purposes of this appeal. State v. Washington, 430 So.2d 641 (La.1983); State v. Joseph, 425 So.2d 1261 (La.1983).
[4] "To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." La.R.S. 15:448.
[5] See also, State v. Johnson, 438 So.2d 1091, 1099 (La.1983); State v. Richards, 426 So.2d 1314, 1316-1317 (La.1982).