532 So.2d 869 (1988)
STATE of Louisiana
v.
Aubrey AUTHEMENT and Elmore J. Songe, Jr.
No. 88 KA 0114.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
*870 Douglas Greenburg, Dist. Atty., Houma, for plaintiff and appellee, State.
Keith M. Whipple, Houma, for defendant and appellant, Aubrey Authement.
Gerald Aurillo, Metairie, for defendant and appellant, Elmore J. Songe, Jr.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
Defendants, Chief of Detectives Aubrey Authement and Deputy Sheriff Elmore J. Songe, Jr. of the Terrebonne Parish Sheriff's Office, were charged in a single bill of information[1] with numerous counts of malfeasance in office, violations of LSA-R.S. 14:134. Specifically, Authement was charged in Counts 1-118, and Songe was charged in Counts 1-54.[2] The state nolle *871 prosequied Counts 39, 49, 55, 57, 58, 61, 62, 64, 65, 73, 75-81, 83, 84, 91, 93, 96-98, 103, 104, and 118, leaving Authement and Songe charged with a total of 91 and 52 counts, respectively. Following trial by jury, defendants were found guilty as charged. Thereafter, the trial court sentenced defendants to concurrent terms of imprisonment at hard labor for two years on each count. Both defendants have appealed, alleging numerous assignments.[3] Because *872 we find Songe's assignment of error 6 includes meritorious contentions requiring both defendants' convictions and sentences to be vacated, we pretermit discussion of defendants' other assignments.
(SONGE'S) ASSIGNMENT OF ERROR NO. 6:
In this assignment, Songe argues that, because the bill of information was written in the general terms of LSA-R.S. 14:134, it did not adequately inform him of the nature and cause of the accusations against him. Further, in response to paragraphs 22, 23, 25, 26, 27, 28, 29, and 30 of his motion for a bill of particulars requesting various facts concerning the alleged offenses,[4] the state declined to provide answers (or gave inadequate answers). Songe asserts that, as a consequence thereof, he was not adequately informed of the bases and details of the charges against him, that he was unable to prepare a defense, and that the bill of information was fatally defective.
Article 1, § 13 of the Louisiana Constitution provides that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him. That provision and its predecessor in the Constitution of 1921 have been consistently interpreted to require that an indictment or information contain the essential facts of the offense charged. State v. Gainey, 376 So.2d 1240 (La.1979). That requirement is embodied in LSA-C. Cr.P. art. 464 which provides as follows:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is *873 alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
Omission of the essential facts from an information is not necessarily prejudicial error because such facts can be given through responses in a bill of particulars. State v. Gainey, supra; State v. Frazier, 492 So.2d 156 (La.App. 1st Cir.1986).
The bill of particulars is a means by which an accused is informed of the nature and cause of the accusation against him. State v. Rogers, 375 So.2d 1304 (La. 1979) on rehearing. Properly used, it should inform the accused with particularity of all the essential facts relied upon to prove the crime charged and remove any doubt as to the crime charged. Hence, the accused will know the scope of his criminal activity so as to properly defend himself and eliminate any possibility of ever being charged again with the same criminal conduct. State v. Rogers, supra. The bill of particulars is, however, not a means for defendant to obtain the state's evidence. State v. Ohrberg, 448 So.2d 1316 (La.App. 1st Cir.1984). It may not be used to discover the details of the evidence, i.e., "exactly how" the state intends to prove its case. State v. Huizar, 414 So.2d 741 (La. 1982). The scope of the bill of particulars rests within the sound discretion of the trial judge, and his rulings will not be disturbed on appeal in the absence of a clear showing of an abuse of that discretion. State v. Ohrberg, supra.
LSA-R.S. 14:134 provides, in pertinent part, as follows:
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.
Before a public officer or employee can be charged with malfeasance in office under LSA-R.S. 14:134, there must be a statute or provision of law which delineates an affirmative duty upon the officer or employee. State v. Perez, 464 So.2d 737 (La. 1985). The duty must be expressly imposed by law upon the officer or employee because he is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges. State v. Perez, supra. When a public official takes the oath of office contained in LSA-Const. Art. 10, § 30, swearing to uphold the laws of Louisiana, that oath imposes upon him a specific duty not to obstruct or interfere with the execution of those laws. State v. Perez, supra.
Herein, the bill of information charged in counts 1-38, 40-48, and 50-54 that Songe and Authement and in counts 106-117 that Authement violated LSA-R.S. 14:134 when they "did ... unlawfully and intentionally refuse or fail to perform a duty lawfully required of [them] as such officer or employee in deliberately taking into their own possession for their own use and benefit, one [in this space, each count includes a description of a particular firearm], by obtaining the release of said weapon in contravention of the duty lawfully required by them, by virtue of their public office or employment." Counts 56, 59, 60, 63, 66-72, 74, 82, 85-90, 92, 94, 95, 99-102, and 105 of the bill of information charged that Authement violated LSA-R.S. 14:134 when he "did ... unlawfully and intentionally refuse or fail to secure and safeguard in the Official Terrebonne Parish Sheriff's Office Evidence Vault, one [in this space, each *874 count includes a description of a particular firearm], as was his lawfully required duty by virtue of his public office or employment; further that [Authement] knowingly permitted one or more public employees, under his authority, to intentionally refuse or fail to perform a duty lawfully required of him or her in securing, safeguarding, and/or otherwise legally disposing of said firearm, or to perform such duty in an unlawful manner."
Songe contends by this assignment that the trial court erred by finding the state's responses to paragraphs 22, 23, 25, 26, 27, 28, 29, and 30 of his motion for a bill of particulars were sufficient. In paragraph 22 of the motion, Songe asked the state what statute "nominates, decrees, and establishes" a particular geographical location as to the "Official Terrebonne Parish Sheriff's Evidence Vault?" In paragraph 23, Songe asked the state to set forth and describe the location and address of the vault. Paragraph 25 asked the state (as to each count) if the state claimed Songe failed or refused to perform the duty and asked that the state elect (to rely on) one or the other. Songe requested in paragraph 26 that the state indicate (as to each count) how the state would allege and prove Songe performed a duty required of him in an unlawful manner. In paragraph 27 Songe asked the state (as to each count) to disclose what statutory provision was violated by him in performing his duty as a public official in an unlawful manner. Paragraph 28 asked the state (as to each count) to inform Songe of the duty he refused or failed to perform. Finally, paragraphs 29 and 30 requested the state (as to each count) to disclose the facts showing that Songe performed a duty in an unlawful manner and the manner in which the duty was unlawfully performed. On April 8, 1987, the state filed a bill of particulars responding to Songe's motion. In the bill of particulars, the state declined to answer the requests made in paragraphs 22, 23, 26, 29, and 30 of the motion. In answer to paragraphs 25, 27 and 28, the state responded by referring to LSA-C.Cr.P. arts. 163 and 167, LSA-R.S. 14:67 and 14:68, and LSA-R.S. 15:41. Thereafter, on May 4, 1987, the state amended the bill of information to charge Songe and Authement with violating LSA-R.S. 14:134 (1) and (3) and LSA-C.Cr.P. arts. 163, 167, and 225.
The bill of information as elucidated by the state's written responses to defendants' motions for bills of particulars alleged that each of the counts of the bill of information was based upon the release of a specific firearm from the "Official Terrebonne Parish Sheriff's Office Evidence Vault."[5] Through the state's answers to defendants' motions for bills of particulars and the state's subsequent amendment to the bill of information, the state informed defendants that the "duty lawfully required of [defendants]" as public officers or public employees by LSA-R.S. 14:134 was founded in the provisions of LSA-C.Cr.P. arts. 163, 167, and 225, LSA-R.S. 14:67 and 14:68, and LSA-R.S. 15:41. However, a careful examination of those statutes reveals that none of them expressly imposes any affirmative duty lawfully required of defendants.
LSA-C.Cr.P. art. 163[6] imposes express affirmative duties upon a peace officer, to whom a search warrant is directed, to execute the warrant and bring any property seized into the court issuing the warrant. LSA-C.Cr.P. art. 225[7] imposes *875 express affirmative duties on a peace officer making an arrest to take from the person arrested all weapons and incriminating articles he may have about his person and to deliver such evidence seized incidental to the arrest to the sheriff, chief of police, or other person before whom the person arrested is taken. Because each of the charged counts pertained to the release of weapons that were already in the sheriff's evidence vault rather than the circumstances giving rise to the duties set forth in LSA-C.Cr.P. arts 163 and 225, those provisions are inapplicable to the charged offenses. LSA-C.Cr.P. art. 167,[8] LSA-R.S. 14:67 and 14:68, and LSA-R.S. 15:41[9] impose no express affirmative duties on a sheriff or other peace officer. LSA-R.S. 14:67 and 14:68 are criminal statutes that define the crimes of theft and unauthorized use of a movable, respectively. LSA-C.Cr. P. art. 167 details duties of the court regarding property seized pursuant to a search warrant, and LSA-R.S. 15:41 details duties of the court and clerk of court regarding the disposition of property seized in connection with a criminal proceeding.
Accordingly, the trial court abused its discretion only insofar as it ruled that the state had adequately answered Songe's requests, in his motion for a bill of particulars, that the state inform him (as to each of the counts) of the duties lawfully required of him as a public officer or employee. In all other respects, the trial court's rulings, that the state's answers to Songe's requests were sufficient, were correct since the requests pertained to details of the state's evidence.
At trial, the state introduced into evidence certified copies of the signed oaths of office of Sheriff Rozands and defendants filed with the Terrebonne Parish Clerk of Court's Office.[10] During cross-examination *876 of Aubrey Authement, the prosecutor questioned Authement regarding the substance of Authement's oath of office. Thereafter, in closing arguments, the prosecutor read to the jury the specific wording used in those oaths, noting that such a document "speaks for itself and says what defendants' obligations were. If the state's intent was to prove that defendants committed the charged offenses by violating the duties imposed upon them by their oaths not to obstruct or interfere with the execution of LSA-C.Cr.P. art. 167 and/or LSA-R.S. 15:41, providing for positive duties of the court regarding the retention and disposition of property seized pursuant to a search warrant and positive duties of the court and the clerk of court regarding the disposition of property seized in connection with a criminal proceeding, the state should have so informed Songe in its answers to Songe's motion for a bill of particulars.[11]
Because the crime of malfeasance as defined in LSA-R.S. 14:134[12] and as judicially interpreted may be committed in various ways, an identification of the particular duties lawfully required of defendants as public officers or public employees is necessary before defendants are aware of which acts or omissions may bear criminal responsibility. In the case sub judice, because the bill of information and the state's responses to defendants' motions for bills of particulars failed to include the essential facts disclosing some particular duties that were lawfully required of defendants, their constitutional right to be informed of the nature and cause of the accusations made against them was violated. Cf. State v. Rogers, supra; State v. Miller, 319 So.2d 339 (La.1975). For the reasons expressed herein, defendants' convictions and sentences are set aside; and the case is remanded for further proceedings consistent with the views expressed herein.
CONVICTIONS AND SENTENCES SET ASIDE; CASE REMANDED.
NOTES
[1] Defendants were initially charged by grand jury indictment filed March 4, 1987. Thereafter, on March 6, 1987, the district attorney's office filed the instant bill of information. On April 13, 1987, we granted in part and denied in part Aubrey J. Authement's writ application to this Court. We found the grand jury indictment was fatally defective because it was not endorsed by the foreman of the grand jury and it was not returned in open court. Additionally, we concluded that the bill of information conformed to all statutory requirements and that it was filed in accordance with the district attorney's inherent authority to institute prosecution.
[2] Charlton P. Rozands, the Sheriff of Terrebonne Parish at the time, was charged as a defendant in Counts 1-118, and Terrebonne Parish Deputy Sheriff Ricardo J. Rozands (the sheriff's son) was charged as a defendant in Counts 106-118. The official minute entry dated April 20, 1987, reflects that the matter was called for trial and continued due to the death of Sheriff Rozands. On April 21, 1987, Authement filed a motion to dismiss the sheriff as a defendant. The record shows that the trial court took the motion under advisement on April 27, 1987, but the record does not indicate that any ruling was ever made. In reference to Deputy Sheriff Rozands, the record reflects that he filed a motion for severance of the charges against him and that on April 15, 1987, the trial court granted the motion.
[3] Songe urges twenty-three assignments of error, to wit:

1. Defendant was charged with violating LSA-R.S. 14:134(1), 14:134(3), 15:41, and LSA-C.Cr.P. articles 163, 167, and 225, and the evidence does not show violations of those provisions of law.
2. The trial court erred in ruling in a pre-trial hearing that testimony from Linda Malbrough and Steve Weidenbacher regarding certain exhibits, and the exhibits, constituted res gestae and were admissible in evidence.
3. The trial court erred in denying Songe's Motion To Quash for:
a. Improper selection of the petit jury venire.
b. Lack of jurisdiction based on improper allotment of criminal cases.
c. Misjoinder of defendants and offenses.
d. Duplicity in the bill of information.
4. The trial court erred in denying Songe's Motion to Suppress.
5. The trial court erred in denying Authement's Motion For Severance.
6. The trial court erred in its ruling on Songe's Bill of Particulars Nos. 16, 17, 22, 23, 25, 26, 28, 29, and 30.
7. The trial court erred in denying motion to quash the bill of information filed after the indictment was dismissed.
8. The trial court erred in denying the motion to quash the so-called grand jury indictment signed by an assistant district attorney and a bill of information filed in the same case after all charges were dismissed.
9. The trial court erred in not permitting counsel to question jurors regarding Mr. John Gary.
10. The trial court erred in permitting the testimony of Paul Feyerabend, Barry Hebert, and Mark Soignier.
11. The trial court erred in permitting double hearsay (one witness said what another witness said) for purposes of impeachment, but which was prejudicial to defendants' rights (Feyerabend, Hebert, and Soignier).
12. The trial court erred in denying Songe's right to call John Gary as a witness.
13. The trial court erred in not granting Songe a new trial. Weidenbacher testified he knew Capt. Landry got some guns from the Sheriff and destroyed them. The state knew this fact as he testified to that at the grand jury hearing.
14. The trial court erred in not granting Songe a new trial. Weidenbacher evasively answered as to the whereabouts of the other 56-58 weapons.
15. The trial court erred in denying Songe's Motion In Arrest of Judgment.
16. The trial court erred in denying Songe's Motion For New Trial based on selective prosecution.
17. The trial court erred in denying Songe's Motion To Rescue the district attorney's office.
18. The trial court erred in allowing the state to impeach its own witness, Andy Authement.
19. The trial court erred in all adverse rulings of the trial court during the trial.
20. The trial court erred in all adverse rulings of the trial court on pleas and motions filed by defendant.
21. The trial court erred in not granting Songe a new trial.
22. The trial court erred in not granting Songe's Motion in Arrest of Judgment.
23. All errors set forth by Aubrey Authement.
Authement urges a total of twenty-two assignments of error, consisting of twenty assignments he initially filed and two supplemental assignments he subsequently filed. Authement's initial assignments are as follows:
1. The trial court erred in allowing Sergeant Johnny Lopez to testify as to hearsay.
2. The trial court erred in allowing the district attorney to conduct re-direct examination on a matter which had not been covered on cross-examination.
3. The trial court erred in allowing improper re-direct of attorney James Alcock in allowing the district attorney to elicit testimony as to the delineation of various types of shotguns and the expertise of Mr. Alcock thereupon.
4. The trial court erred in allowing the district attorney to introduce a weapon into evidence before the jury concerning an offense with which the defendant was not charged.
5. The trial court erred in allowing the district attorney to introduce a weapon into evidence before the jury concerning an offense with which the defendant was not charged.
6. The trial court erred in allowing hearsay evidence from the witness Linda Malbrough under the guise of res gestae.
7. The trial court erred in allowing prejudicial evidence by Linda Malbrough as to her "fear" of defendant, Aubrey Authement.
8. The trial court erred in allowing the district attorney to refer to the document used to seize various pieces of evidence for use in the trial as a "grand jury inventory search."
9. The trial court erred in allowing the witness, Officer Weidenbacher, to testify directly from a written statement prepared by him.
10. The trial court erred in allowing Steve Weidenbacher to testify to a hearsay statement of Linda Malbrough, under the guise of Linda Malbrough having previously testified and being available for further testimony.
11. The trial court erred in allowing Steve Weidenbacher to testify as to obviously self-serving statements.
12. The trial court erred in failing to grant to defendants a motion for directed verdict.
13. The trial court erred in allowing the district attorney to prejudicially cross-examine defendant, Aubrey Authement, as to the "destruction of the chain of custody."
14. The trial court erred in allowing the district attorney to introduce statements made by Aubrey Authement to his son, Andy Authement, after having failed to supply defendants with a copy of such statements, after the defense filed a Motion for Bill of Particulars (item 12) and the state having failed to identify such statements.
15. The trial court erred in allowing the witnesses, Paul Feyerabend, Mark Soignier and Trooper Barry Hebert, to testify, said witnesses having been under sequestration by order of the court and having conferred with the district attorney in the coffee shop of the district attorney's office during the course of the trial, each one having the opportunity to hear the other's testimony.
16. The trial court erred in upholding the district attorney's right to tell witnesses who had not yet testified what other witnesses said, said witnesses having been under sequestration by the court.
17. The trial court erred in allowing the state to impeach its own witness, Andy Authement.
18. The trial court erred in allowing hearsay testimony by Paul Feyerabend.
19. The trial court erred in allowing the hearsay testimony of Barry Hebert as to the comments of Andy Authement.
20. The trial court erred in allowing the district attorney to argue from matters not in evidence before the court.
Authement's two supplemental assignments are as follows:
1. Defendant restates and reiterates each and every original Assignment of Error.
2. Defendant incorporates by reference Assignments of Error 1-3 filed herein by co-defendant, Elmore Songe, Jr.
By virtue of Songe's assignment of error number 23 and Authement's supplemental assignment of error number 2, defendants adopted each other's assignments by reference. Accordingly, in this consolidated appeal, we will treat Songe's arguments as those of both defendants. Further, neither defendant briefed Songe's assignments of error numbers 2, 5, 7, 8, 9, 12, 14-17 and 20 and Authement's assignments of error 2, 11, 12; and, therefore, those assignments are considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
[4] The record reflects that Authement filed his own separate motion for a bill of particulars.
[5] We specifically note that a transcript of pre-trial arguments made on April 9, 1987, pertaining to defendants' motions and the state's written responses thereto discloses that during those arguments the assistant district attorney made oral responses to the motions, consistent with the state's written responses, indicating that each of the charges was premised upon a firearm having been removed from the sheriff's evidence vault.
[6] LSA-C.Cr.P. art. 163 provides as follows:

A search warrant shall be directed to any peace officer, who shall execute it and bring any property seized into the court issuing the warrant.
A search or seizure shall not be made during the nighttime or on Sunday, unless the warrant expressly so directs.
A search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance.
[7] LSA-C.Cr.P. art. 225 provides as follows:

A peace officer making an arrest shall take from the person arrested all weapons and incriminating articles which he may have about his person. He shall deliver these articles and all other evidence seized incidental to the arrest to the sheriff, chief of police, or other officer before whom the person arrested is taken.
[8] LSA-C.Cr.P. art. 167 provides as follows:

When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.
[9] The provisions of LSA-R.S. 15:41, in effect at the time of the alleged offenses, provided as follows:

A. If there is a specific statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof.
B. If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:
(1) The seized property shall be returned to the owner, unless a statute declares the property to be contraband, in which event the court shall order the property destroyed if the court determines that its destruction is in the public interest; otherwise, Paragraph (2) of this Section shall apply.
(2) If the seized property is contraband, and the court determines that it should not be destroyed, or if the owner of noncontraband property does not claim it within two years after its seizure, the court shall order:
(a) A sale of the property at a nonjudicial public sale or auction, if the court concludes that such a sale will probably result in a bid greater than the costs of the sale. The proceeds of the sale shall be administered by the court and used exclusively for the maintenance, renovation, preservation, or improvement of the court building, facilities, or records system.
(b) If the court concludes that the cost of a public sale would probably exceed the highest bid, the court may order the property transferred to a public or a nonprofit institution or destroyed or may make such other court ordered disposition as it deems appropriate.
C. Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court. In all other cases the court may either render an ex parte order for the disposition of the property as herein provided on motion of any interested person, or on its own motion, or the court may require a motion contradictorily with the apparent owner or the person in possession of the property at the time of the seizure.
[10] Each of the oaths comprising Exhibit S-64 utilized the phraseology of the constitutional oath of office contained in LSA-Const. Art. 10, § 30, which provides as follows:

Every official shall take the following oath or affirmation: "I, ..., do solemnly swear (or affirm) that I will support the constitution and laws of the United States and the constitution and laws of this state and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as ..., according to the best of my ability and understanding, so help me God."
We further note that while the sheriff was required by LSA-Const. Art. 10, § 30 to take the oath provided therein, LSA-R.S. 33:1433 A (applicable in all parishes except Orleans) required Songe and Authement to take their oaths of office.
[11] We note that, although State v. Perez, 464 So.2d 737 (La.1985) did not involve the issue of whether or not the state's answers to the defendant's motion for a bill of particulars were sufficient, the Perez opinion discloses that unlike the instant situation the state informed the defendant (Leander Perez) in a bill of particulars that he allegedly violated the affirmative duties in LSA-Const. Art. 10, § 30, which contained his oath of office. The Perez court found that both defendants therein had an express affirmative duty, by virtue of their oaths of office, not to interfere with or obstruct the grand jury's performance of its positive duties imposed upon it by law and that, because the bill of information charged a violation of that duty, the bill of information charged an offense punishable under a valid statute. State v. Perez, supra
[12] In addition to LSA-R.S. 14:134, LSA-R.S. 14:134.1, and 14:134.2 proscribe certain conduct of law enforcement officers as constituting malfeasance in office.